[No. 20065.    Department One.    March 29, 1927.]

THE STATE OF WASHINGTON *on the Relation of Pacific Power & Light Company, Respondent,* v. THE DEPARTMENT OF PUBLIC WORKS *et al., Appellants.*[1]

[1] ELECTRICITY (1)—STATUTORY AND MUNICIPAL REGULATIONS—VALUATIONS—REVIEW—JURISDICTION OF COURTS.  Where proceedings to ascertain, fix and adjust reasonable charges for a public service electric power company was commenced in T county, the superior court of that county has jurisdiction of a writ to review the decision of the department, under Rem. Comp. Stat., § 10428, providing generally for a review of all orders by the superior court of the county where the proceeding was commenced; notwithstanding the hearing, commenced in another county, involved the valuation of the properties, and Id. § 10441, provides that review in valuation proceedings shall be had in the superior court of the county where the hearing was had, since the latter section applies to strictly valuation proceedings for that purpose only.

[2] SAME (1).  Where a public service corporation was engaged in interstate business, with part of its generating plants situated outside of the state, the department has a right, in fixing a

[1] Reported in 254 Pac. 839.

valuation for rate making purposes, to take into consideration the value of the entire plant.

[3] SAME (1)—VALUATION FOR RATE PURPOSES—INCLUSION OF POWER PROPERTY IN OTHER STATES. Where the valuation of the properties of a public service power company, fixed and determined by the department for rate making purposes, included a generating plant situated outside of the state, and subsequently such portion of the plant was no longer used by the company, the department is not concluded by its prior determination, and may make deduction therefor, as for a "change in conditions" as authorized by Rem. Comp. Stat., § 10441, upon subsequent proceedings.

[4] SAME (1)—VALUATION OF POWER COMPANY—CORRECTION OF VALUATIONS. In such a case, the fact that, at an intervening hearing, the department erroneously refused to make the deduction for such changed condition because it supposed itself concluded by the first valuation, does not preclude it from correcting the error by subsequently making the deduction; since such deduction is not a "revaluation" within Rem. Comp. Stat., § 10441, making valuations final and conclusive, except for changed conditions.

Appeal from a judgment of the superior court for Thurston county, Wilson, J., entered April 30, 1926, setting aside an order of the department of public works fixing values for rate-making purposes. Reversed.

*The Attorney General, H. C. Brodie, Assistant, Hugh M. Caldwell,* and *James P. Neal,* for appellants.

*John A. Laing,* and *Cleland & Clifford,* for respondent.

FULLERTON, J.—This is an appeal from a judgment of the superior court of Thurston county reversing and setting aside an order of the department of public works which fixed the value of the property of the Pacific Power & Light Company, for rate-making purposes.

The power company named is a public service corporation, engaged in the business of supplying sundry

municipal corporations of the state of Washington, and the inhabitants of the territory within and adjacent to the corporations, with electric energy for heat, light and power purposes. On May 16, 1924, the city of Walla Walla filed a complaint with the department, averring, in substance, that the rates and charges for the energy furnished to that city, its inhabitants, and the inhabitants of the adjacent territory were grossly in excess of a reasonable charge for the services rendered, and prayed a hearing on the complaint. On the filing of this complaint the department filed its own complaint, broadening the inquiry so as to make it include the entire territory served by the corporation. Thereupon the city of Walla Walla amended its complaint, making it more specific in its charges, averring that the rate base upon which the power company was predicating its rates and charges contained numerous and diverse properties, items and values, which were not used by the company or useful to it in the manufacture, development or distribution of electric energy. Some ten or more of such properties and items it specifically enumerated, among which were:

"The hydro-electric power plant situated on the Walla Walla river, transmission lines and distribution system and properties of the respondent [the power company] all located in Umatilla county, Oregon, generally known as the Oregon properties."

Paragraph VI of the complaint is as follows:

"That the rate base, upon which the respondent, Pacific Power & Light Company, is charging its rates and collecting its revenues, improperly and illegally includes large sums as values of water powers and water rights, in this: That the Public Service Commission of Washington, as the predecessor of the Department of Public Works, committed palpable error by including in said rate base values for water power rights; and complainant further alleges that, even if it

be held that palpable error was not committed by the inclusion in the rate base of values for said water power rights, the said water power rights are not now used or useful in connection with any of the properties described in the preceding paragraph, or in connection with any of the transmission lines, substations or distributing systems connected with the power plants described in said preceding paragraph."

Between the time of the filing of the original and amended complaints of the city of Walla Walla, various other cities and towns served by the power company filed with the department complaints in intervention, all making the specific allegation that the rates charged by the power company were exorbitant and excessive and all containing the allegation "that such rates are based upon a false rate structure, including items that are erroneous and improper."

Notice of the filing of the complaints was given the power company, and it was required to answer thereto. On its appearance in the proceedings, the power company moved to strike certain parts of the complaints. Its motion being overruled, it answered, denying the traversable allegations therein, and setting up certain affirmative defenses.

In the first of these defenses, it set up a valuation proceeding held before the department (then called the public service commission) in which the department by an order entered as of June 30, 1913, fixed and determined the value of its property for rate-making purposes at $4,700,000; averring that the valuation was made upon notice and after a full hearing, and that the department by such finding and order was now estopped to inquire into the regularity or validity of the order.

In its second defense, it set up a subsequent valuation proceeding held in 1919, in which the department

approved and adopted its former finding and order, added thereto the betterments and improvements made between the date of the order and the date of the hearing, and found that the value of the property as of date December 31, 1919, was the sum of $6,260,400.28. It further averred with respect to this order that it was made upon notice and after a full hearing, and was binding and conclusive upon the department.

The third defense was in the nature of a cross-complaint. In it the power company reiterated its former allegations with reference to the obligatory effect of the prior valuations of its property made by the board, and further averred that, if any attempt was made to review or reconsider the earlier valuations, it would be wholly impractical, if not impossible, because of changes in the physical conditions of the property, loss of documentary evidence and records, and the inability to procure the necessary witnesses. It prayed that, if the department deemed it necessary to so review and reconsider its former orders fixing the valuations, it make a new and original valuation, offering to waive irrevocably any objection it might have or make under the statutes of the state and under the general law to such a procedure.

The matter came on for hearing before the department sitting at the city of Walla Walla on August 11, 1925. At the hearing it was made to appear that the department had made the prior orders set forth in the answer and much evidence was taken relative thereto. Evidence was also taken as to the value of the betterments and improvements made by the power company to its property subsequent to the date of the last of the prior hearings. At the conclusion of the evidence, the department made the following findings:

"I. That the Public Service Commission of Washington in its order No. 1683, entered January 7th,

1915, found the value of respondent's property, as of June 30th, 1913, to be the sum of $4,700,000.00; that the said sum of $4,700,000.00 included property located in Umatilla County, Oregon, then used and useful in furnishing service in Washington.

"II. That the orders of the Public Service Commission of Washington entered on the 15th day of July, 1919, and the 29th day of September, 1920, fixing the value of respondent's property, as of December 31st, 1918, and as of December 31st, 1919, respectively, erroneously and inadvertently included in said valuations sums representing the value of property of respondent located in Umatilla county, Oregon, and no longer used or useful in furnishing service in Washington.

"III. That the sum included in said value, as of December 31st, 1918, and December 31st, 1919, represented by property in Umatilla County, Oregon, not used or useful for furnishing service in Washington, was $873,922.00.

"IV. That the total value of the Washington property and the Umatilla County property including working capital, as of December 31st, 1919, was $6,426,168.54.

"V. That the value of the property situated in Washington, as of December 31st, 1919, including working capital, was $5,552,246.54.

"VI. That the value fixed for Washington property, as of December 31st, 1919, included the sum of $144,844.00, as working capital, the sum of $76,432.94 for the Goldendale System, and the sum of $54,988.32 for the White Salmon System.

"VII. That the reasonable value of the Yakima-Walla Walla System, as of December 31st, 1919, not including new allowance for working capital, was $5,275,981.28.

"VIII. That between December 31st, 1919, and December 31st, 1924, the total net additions to the Yakima-Walla Walla System amounted to $999,598.60.

"IX. That the value of the Yakima-Walla Walla electric system in Washington, including the value of

obsolete plants, as of December 31st, 1924, was $6,275,579.88.

"X.   That the following sums representing property no longer used or useful should be deducted from the rate base:

| | |
|---|---|
| Kennewick Steam plant .......... | $45,195.00 |
| Pomeroy Steam plant ............ | 13,608.27 |
| Yakima Hydro-electric plant (Fruitvale) ................. | 204,519.04 |
| | |
| Total ..................... | $263,322.31 |

"XI.   That the value of the Yakima-Walla Walla electric property in the State of Washington, used and useful, as of December 31st, 1925, not including an allowance for working capital, is $6,012,257.57.

"XII.   That $319,789.11 is a reasonable and adequate sum for working capital.

"XIII.   That the fair value of the Yakima-Walla Walla system, including working capital, as of December 31st, 1924, is the sum of $6,332,046.68.

"XIV.   That a fair allowance for the annual depreciation expense on respondent's property in the Yakima-Walla Walla district is 3.5 per cent of its average plant value.

"XV.   That the respondent is not setting up a depreciation reserve which is adequate to take care of accrued depreciation upon its property in the Yakima-Walla Walla district, nor is it setting up a depreciation reserve allowance in its accounts for the depreciation expenses allowed by the Department.

"XVI.   That the gross revenues of the company's Yakima-Walla Walla electric system for the year 1924 is the sum of $1,570,145.74; that the deductions from operating revenues for operating expenses of the same property is $753,321.97; for taxes on the same property, $129,156.56; for depreciation on the same property, $211,265.24; which leaves a net operating income for the year 1924 amounting to $476,401.97; that the average plant value of used and useful property for 1924 amounts to $5,902,364.63; which when added to the allowance for working capital, amounting to $319,-789.11, gives a rate base for 1924, amounting to $6,-

222,153.74; that the respondent's annual rate of return for the year 1924 was 7.66 per cent."

Based on the findings, it made the following order:

"Wherefore, It is Ordered:

"I.    That the rate base of the electric light and power properties of the respondent company in the Yakima-Walla Walla district, state of Washington, as of December 31st, 1924, be and the same is hereby fixed at the sum of $6,332,046.68, including working capital.

"II.    That the respondent company shall be and is hereby allowed an annual depreciation expense amounting to 3.5 per cent of the average plant value of its electric light and power properties in the Yakima-Walla Walla district, in the state of Washington.

"III.    That the respondent company shall set up in its books an account representing depreciation reserve and shall credit to this account from year to year the entire amount hereinabove allowed for depreciation expense.    It shall enter the amount credited to depreciation reserve in such manner that the amount assignable to each rate making division of its property may be readily determined.    The respondent shall charge against the reserve so established all plant retirements, less salvage, except those made prior to December 31st, 1924, and those required by this order."

The power company sued out a writ of review from the findings and order in the superior court of Thurston county, which the department and the city of Walla Walla moved to dismiss for want of jurisdiction. This motion the court denied. On the merits, the court determined that the department was without authority or jurisdiction to review or modify the prior orders made by it; holding "that the rate base and values fixed by the former findings and orders of the commission [department] are conclusive upon all parties concerned, except as to subsequent changes as pointed out by the statute." It thereupon entered a judgment

reversing the order and remanding the cause to the department for further action in consonance with its conclusion. From this judgment, the city of Walla Walla and the department prosecute the present appeal.

[1] The appellants first contend that the trial court erred in entertaining jurisdiction of the review proceedings. The contention is based on the statutes under which the department functions. The statutes are broad. They give to the department jurisdiction over practically all public service utilities within the state and empower it to make orders fixing the rates and charges that may be made for the services rendered by such utilities, and power to make orders regulating the conduct of their businesses in so far as the general public or the patrons of the utilities are affected thereby. All such orders are made by statute subject to review in the superior courts. The statutes contain two provisions with reference thereto. The first (Rem. Comp. Stat. § 10428 [P. C. § 5613]), is sufficiently broad to cover all orders of the department. It provides:

"Any complainant or any public service affected by any order of the commission [department], and deeming it to be contrary to law, may, within thirty days after the service of the order upon him, or it, apply to the superior court of the county in which such proceeding was instituted for a writ of review, for the purpose of having its reasonableness and lawfulness inquired into and determined. . . ."

The second (Ib. § 10441 [P. C. § 5619]) relates solely to valuations of the property of a public utility made by the department. With respect to the review of such orders, it provides:

"Any company affected by the findings, or any of them, believing such findings, or any of them, to be

contrary to law or the evidence introduced, or that such findings are unfair, unwarranted or unjust, may institute proceedings in the superior court of the state of Washington in the county in which said hearing has been held, or, if held in more than one county, then in the county in which said hearing was commenced, and have such findings reviewed, and their correctness, reasonableness and lawfulness inquired into and determined. . . ."

In the case of *Everett v. Dept. of Public Works,* 125 Wash. 341, 215 Pac. 1045, we held that the first of these sections is general, while the second is special, and that an order entered in a proceeding instituted for the purpose of valuing the property of a public service utility must, by the terms of the statute, be reviewed in the superior court of the county where the hearing was held, and that the superior court of the county in which the proceeding was instituted was without jurisdiction for the purposes of review. The present proceeding, as we have stated, was instituted before the department to inquire into the rates and charges the respondent's utility was making for the services it rendered. It appeared that the last valuation of its property was made as of the end of the year 1919, and that it was necessary to bring the valuations down to date before the department could determine whether its charges were reasonable or unreasonable. The department entered upon this inquiry first, holding its hearing in Walla Walla county. It proceeded no farther than to ascertain this value and make a finding and order evidencing its conclusions, when the present writ of review was sued out. It is the necessary conclusion from the statutes and rule of the cited case that, since the proceeding was instituted in the county of Thurston, the superior court of that county has jurisdiction to review the order, if it is to be regarded as a rate-

making proceeding, but is without jurisdiction, if it is to be regarded as a proceeding to fix the value of the property of the utility.

It is our opinion that the trial court rightly held that it had jurisdiction to review the order. The proceedings were instituted in Thurston county. Both the primary and ultimate purpose of the proceeding was to ascertain whether the rates and charges of the utility were reasonable or unreasonable, and to approve or correct them accordingly as the department should so find. The inquiry into the present value of the property of the corporation was but one of the steps in that proceeding. It was a step necessary to the determination of the ultimate question. While the order has finality on the question determined, the department has authority to, and announces that it will, carry the inquiry to a final conclusion. Had the utility waited until the final order, manifestly its right of review would have been in the superior court of Thurston county, the county in which the proceedings were instituted, and we cannot conclude that its right is any less certain because it seeks to review an intermediate order entered in the proceedings.

The statutes, as will be observed, are not entirely consistent. The first of the provisions above quoted seems to contemplate that a proceeding before the department can be instituted in some other county than the county of Thurston, yet the statutes elsewhere provide that the department shall maintain its office at the state capital, "where the commission [department] shall reside," and that all proceedings shall be instituted by a written complaint filed with the department. Since the capital of the state is in Thurston county, it is difficult, because of these requirements, to see how a proceeding could be insti-

tuted elsewhere than in that county. There is further-
more no very apparent reason why a distinction should
be made between a valuation proceeding and other
proceedings as to the court in which a writ of review
may be sued out. Inasmuch, however, as the legisla-
ture has seen fit to make the distinction, the courts
cannot do otherwise than give it effect. We think,
however, that in the interest of certainty it is best
to give the statute a somewhat literal construction,
and hold that in a strictly valuation proceeding, that
is to say, in a proceeding the sole purpose of which is
to value the property of a utility, the writ of review
must be sued out in the county in which the hearing is
held, or, if held in more than one county, then in the
county in which the hearing is commenced, while a
writ sued out to review any other order of the depart-
ment shall be sued out in the county in which the pro-
ceedings leading up to the order are instituted.

[2]    On the merits of the controversy the argu-
ments of counsel have taken a somewhat wide range,
yet we think the material questions involved are not
many. The first and principal question is, whether the
trial court erred in holding that the earlier orders of
the department were binding and conclusive upon it,
and that it had no power or authority in this proceed-
ing to inquire into their regularity or validity.

The conclusion of the trial court has its foundation
in the act creating the public service commission of
which the department is the successor in authority.
(Laws of 1911, p. 538, Rem. Comp. Stat., § 10441 [P. C.
§ 5619]). By § 92 of that act the commission was
required to ascertain the value of the property of each
of the public service companies operating within the
state "used by such company for public convenience,"
and "make and render findings of fact in writing

covering all'' such matters. Relative .to the matters to be ascertained at such hearing, the section contained these specific provisions, namely:

"The commission shall ascertain, as early as practicable, the cost of construction and equipment, the amount expended in permanent improvements, and the proportionate amount of such permanent improvements charged in construction and to operating expenses respectively, the present as compared with the original cost of construction, and the cost of reproducing in its present condition the property of every public service company.

"It shall also ascertain the amount and present market value of the capital stock and funded indebtedness of every public service company.

"It shall also ascertain, in the case of companies engaged in interstate business, the relative value of the use to which such property in this state is actually put in the conduct of interstate business and state business respectively.

"It shall also ascertain the total market value of the property of each public service company operating in this state, used for the public convenience within the state.

"It shall also ascertain the time intervening between the expenditure of money in the cost of construction and the time when returns in the shape of dividends were first received by each of these companies.

"It shall also ascertain the probable earning capacity of each public service company under the rates now charged by such companies and the sum required to meet fixed charges and operating expenses, and in case of a company doing interstate business it shall also ascertain the probable earning capacity of such company upon intrastate business and the sum required to meet fixed charges and operating expenses on intrastate business, and the relative proportion of intrastate and interstate business, the relative proportion of the operating expenses connected therewith, the relative proportion of the revenue which should be derived therefrom.''

Relative to the finality of such findings, the statute provides:

"The findings of the commission so filed, or as the same may be corrected by the courts, when properly certified under the seal of the commission shall be admissible in evidence in any action, proceeding or hearing excepting with respect to matters of assessment and taxation, in which the state or any officer, department or institution thereof, or any county, municipality or other body politic and the public service company affected is interested, whether arising under the provisions of this act or otherwise, and such findings when so introduced shall be conclusive evidence of the facts stated in such findings as of the date therein stated under conditions then existing, except as a basis for taxation, and such facts can only be controverted by showing a subsequent change in conditions bearing upon the facts therein determined. . . .

"The commission shall hereafter, from time to time, cause further hearings to be had for the purpose of ascertaining the betterments, improvements, additions and extensions made by any public service company to its property subsequent to the date of any prior hearing, and shall examine into all traffic movement and every matter and thing that would change, modify or affect any finding of fact previously made, and shall at such time make findings of fact supplemental to those theretofore made, showing the amount expended in betterments, improvements, extensions and additions since such prior findings and the cost of reproducing the same, the value of the property used by such company at the time of such subsequent hearing, the relative value of the use to which such property is put in the performance of intrastate and interstate business respectively, and the value of the property of such company in the state used for the public convenience of intrastate business. Such hearing shall be had upon the same notice, the examination conducted in the same manner, and the findings so made shall have the same force and effect as is provided herein for such original notice, hearing and findings:

*Provided,* That such findings made at such supple-
mental hearing shall be considered in connection with
and as a part of the original findings except in so far
as such supplemental findings shall change or modify
the findings made at the original hearing.'' [Rem.
Comp. Stat., § 10441.]

It was the conclusion of the trial court that the latter
of these quoted parts of the statute made the prior
findings of the department conclusive upon it in all sub-
sequent proceedings, uncontrovertible, except in an
instance where there was a change in condition bear-
ing upon the facts determined, and that here there was
no showing of a changed condition.

The appellants contest this conclusion of the trial
court; arguing that, if it appears in a later hearing
that a palpable error was committed by the department
in the earlier finding, the department may upon the
later hearing correct the error; and that such palpable
error does here appear, since the department in the
first of the hearings included, as property of the re-
spondent which it was entitled to have considered as
property used and useful in furnishing service within
the state of Washington, property situated in the state
of Oregon. There is a controversy between the parties
whether in fact the value of any property in the state
of Oregon was taken into consideration by the com-
mission in making up the total valuation as of the date
of the order. But we think it would be neither help-
ful nor enlightening to discuss the question at any
length. The findings of the commission, and much of
the evidence on which the findings are based, are in
the record. These documents, to our minds, very con-
clusively show that such property was taken into con-
sideration by the commission in making up its values.
What part of such value entered into the total does

not directly appear, but there is little doubt that it added materially to that total.

We are not, however, able to follow the appellants in their contention that it was error for the commission to so include such property. The respondent was engaged in interstate business. The plant in consideration was one of the units operated by the respondent in the generation of electric energy used in its interstate business. The plant was directly connected by a transmission line with the distributing lines in the state of Washington, and much of the electric energy there generated was transmitted into the latter state by the respondent and disposed of therein to its patrons requiring such energy. The purpose of valuing the property of a public service company is, of course, to aid in fixing a base on which to determine the reasonable rates and charges which the company may exact for the services it renders. Manifestly, if this base is to be a just one, the value of all of the property necessarily used by the utility in the performance of the service wheresoever situated must be taken into consideration in forming it. It could be that a company supplying electric energy to consumers in this state would have all of its generating plants located outside of the state with nothing but transmission lines herein, and it could be that all of the energy generated was used in this state. In such a case, it is plain that a charge for services based alone upon the value of the transmission lines would not be remunerative to the company; in fact, since the value and cost of upkeep of the transmission lines bear but a small proportion to the value and cost of the upkeep of the generating plant, it is difficult to see how it could perform the service at all. Were this the situation, no one could rightly say that the value of the entire

plant should not be taken into consideration in fixing the rate base, and this being so, it must follow that when a proportionate part of the energy used in the state is generated outside of the state, a like proportion of the cost of such generation must be added to the rate base. This, it seems to us, is not only the just rule, but that it is the rule the legislature contemplated when it enacted the statutes relative to valuing the property of a public service corporation doing an interstate business, which we have before quoted. We cannot conclude, therefore, that the commission erred in its finding of value in 1913, when it included therein a proportionate part of the plant of the respondent situated outside of the state.

[3]   In its finding of value as of December 31, 1919, the commission adopted as its starting point the values as found in 1913, and added thereto the betterments and improvements made in the interim. It, however, found a changed condition; it found that the energy generated by the plant in Oregon was no longer used or necessary to be used by the respondent in serving its patrons residing within the state of Washington. It did not, however, deduct from the earlier total the amount of the value of the plant entering into that total. The department, at the hearing now in review before us, as will be observed by its finding which we have quoted, sought to correct the error. It found that the Oregon plant is not now used or useful in furnishing service in the state of Washington; it found that the Oregon plant was valued at the first hearing in the sum of $873,922, and found that this sum was erroneously included in the total valuation made as of December 31, 1919, and that the latter total was too large by that sum. It deducted that sum from the total found as of December 31, 1919, deducted certain

other items, added the net value of the additions made
to the property by the respondent between December
31, 1919, and the time of the hearing, and finally found
that the value of the property, including working
capital, for rate-making purposes, as of date December 31, 1924, was the sum of $6,332,046.68.

The question then finally resolves itself into this:
Did the department, in making up its present
valuation, err in deducting so much of the value of the
Oregon plant as was included in the first finding of
value made by the commission? Had the respondent
ceased to use the energy generated by the plant in the
state of Washington subsequent to the date of valuation made in 1919, no one would question that the
deduction was properly made. It would then be a
"change in conditions bearing upon the facts therein
determined," for which the statute expressly permits
the finding to be controverted.

[4] But the change occurred before that date, and
the commission in its valuation of that year refused
to make the deduction, construing its prior order,
erroneously we find, as not containing a valuation of
the Oregon plant, and the statute declares that a finding of value can be controverted only by showing a
subsequent change in conditions. But, notwithstanding
this seeming conclusiveness of the statute, we do not
think it was intended to cover a situation such as is
here presented.

It was undoubtedly the contemplation of the legislature that, when a valuation of the property of a
public utility was once fairly made for rate-making
purposes, it should thereafter stand as the fixed value
of the property, to be changed or modified only by
changed conditions, such as non-use of some part of
the property, depreciation in the property, additions
to it, and such like things which lessen or add to the

value of the property. But we cannot conceive that it was in the contemplation of that body that an error committed by the department, when making such valuation, by including property that should be excluded or by excluding property that should be included, should thereafter be perpetuated. Such errors are continuing, and continuously enter into and affect the reasonableness of the rates the utility may exact for the service it renders. If the error has the effect of lessening the value of the property, the utility suffers thereby, as the rate fixed may be too low to give it an adequate return; if the error unduly increases the valuation, then the patrons of the utility suffer, as a rate based thereon may be more than a reasonable exaction for the services rendered. Justice to the utility and to the patrons of the utility alike therefore forbids that errors of this sort be given a permanent effect. This court in the case of *State ex rel. Spokane v. Kuykendall,* 119 Wash. 107, 205 Pac. 3, recognized that palpable errors made in valuations of the property of a utility could be corrected at a subsequent hearing. The parties dispute the application of the rule to the present case, because of our use of the word "palpable" in qualifying the meaning of the word "error." But "palpable," according to its ordinary definition, is synonymous with the terms "easily perceptible," "plain," "obvious," "manifest," and in our opinion, notwithstanding the arguments to the contrary, the error here is of this sort.

The respondent, however, contends that the error here complained of cannot be inquired into or corrected in this form of proceeding; arguing that, if the department desires to make a new valuation of property previously valued by itself or its predecessor, other than on a showing of a subsequent change in conditions bearing on the facts previously determined,

it can do so only by instituting and holding a valuation proceeding in the manner prescribed by the provisions of the statute relating to the valuation of property, not in a proceeding instituted to establish rates. But we cannot concede that the department in this instance did revalue any property which had been previously valued by itself or its predecessor. The department but found, as we view its action, that its predecessor had in a valuation proceeding correctly valued the property of the respondent; that because of a change in condition a part of the property so valued was no longer used or useful in the business of the respondent conducted within this state; and that it but deducted the value of this property from the rate-making base. It is true there was an intermediate rate-making proceeding in which the condition existed which warranted the deduction, and true that no deduction was at that time made, but there was at that hearing no valuation of property which the present hearing revalues. All that was done in the present proceeding was to deduct from the rate base property which the commission at the intermediate hearing failed to deduct. This, we repeat, is not to revalue any of the property of the respondent which had been previously valued. It is, perhaps, needless to add that the statute contemplates but one valuation proceeding. All subsequent proceedings are rate-making proceedings, in which the department takes the valuations made in the rate-making proceeding as established, recognizing only changes in condition. This is not to say, of course, that conditions may not arise where an entire revaluation may be necessary. But the question under what conditions the necessity may arise is not presented here and we do not decide it.

We, hold, therefore, that the trial court was in error

in ruling that the department was without power to deduct from the rate base the value of the property in the state of Oregon formerly included therein.

The other objections made by the respondent merit no extended discussion. There was, it is true, no very certain measure by which to determine what proportion of the value of the property deducted was included in the original valuation, but an exhaustive examination was given the question by the members of the department and their able assistants, and our study of the record convinces us that no injustice was done the respondent by the conclusion reached. Nor can we direct a dismissal of the proceedings because the department found that the rate of return the respondent is now receiving on the present value of the property is less than eight per cent per annum on the money invested. Whether this return is reasonable or unreasonable is primarily for the department to decide, and it as yet has not passed upon the question.

The judgment of the superior court is reversed, and the cause is remanded to that court with instructions to affirm the order of the department.

TOLMAN, MITCHELL, and MAIN, JJ., concur.