[1] Reported in 208 P.2d 882.
This case comes before the court upon appeals by the Clarkston chamber of commerce and city of Clarkston from a judgment of the superior court for Thurston county, entered January 3, 1949, affirming the third supplemental order of the department of public utilities of Washington, in cause No. U-8066 entered February 3, 1948. The order approved the rates for telephone service applicable to the city of Clarkston and vicinity as filed with the department of public utilities by The Pacific Telephone and Telegraph Company. Clarkston Heights Grange No. 982 was permitted to intervene in the administrative hearings, but has not appeared in this court. The Pacific Telephone and Telegraph Company will be referred to as the "company," the city of Clarkston and the Clarkston chamber of commerce as "appellants" and the department of public utilities as the "respondent."
The company operates a telephone system in the states of Washington and Idaho, transacting both intrastate and interstate business. Many years ago, the company established a telephone exchange at Lewiston, Idaho, through which it served patrons there and in the adjacent territory. Later, the company commenced to serve patrons across the Snake river in the Clarkston area in the state of Washington *Page 143 
and gradually increased its service, so that at the time of the hearing it was serving approximately two thousand subscribers and approximately five thousand subscribers in the Lewistown area. All of the local telephone service for the Clarkston area was through the Lewiston exchange. The question of rates for local service has never been before the department of public utilities of Washington prior to the institution of this proceeding.
Sometime in 1946 the company filed an application for a general increase in rates with the Idaho public utilities commission, and early in 1947 a similar application was filed with the respondent. A series of hearings was held by the respondent in Seattle regarding the proposed rates for the state as a whole, less the Clarkston area. It was determined that rates for the Clarkston area would not be considered in the Seattle hearings, due to the peculiar situation in Clarkston in that it was served by an exchange located in Lewiston. The appellants were advised that a special hearing would be held in the vicinity of Clarkston regarding the rates in that area. In July, 1947, upon due notice to appellants, the respondent conducted a joint hearing with the Idaho public utilities commission at Lewiston, and after the hearing made findings of fact and entered a general order increasing rates for the state at large, less the Clarkston area. Subsequently, the respondent entered its third supplemental order approving an increase in rates for Clarkston and vicinity.
By their statement of questions involved and their assignments of error, the appellants urge that the third supplemental order is invalid because the respondent held the hearing upon which it is based outside of the state of Washington and in the state of Idaho; that appellants were not accorded a fair hearing in that they were, in effect, dissuaded from attending the hearings in the state of Washington in which Washington rate-making factors were involved, but were required to present their case at a concurrent hearing held by the departments of the states of Washington and Idaho where Idaho rates were involved *Page 144 
and were governed by Idaho procedure where Idaho rate-making factors predominated and controlled; that the respondent proceeded on a fundamentally wrong basis in that it did not consider the Clarkston area separately from the Lewiston exchange, and that the respondent did not make sufficient findings of fact upon which to base its order.
We do not understand that appellants are seeking to avoid an increase in telephone rates or that they claim that the rates approved by the third supplemental order are unreasonable or excessive; but their claim is that, when rates are fixed, such action must be taken in a lawful, fair, and constitutional manner, which they assert was not done in this case.
[1] The appellants contend that the respondent was without power or authority to conduct a hearing outside of the state of Washington for the purpose of determining the telephone rates the users in Clarkston and vicinity should pay. At the outset it is well to have in mind that, although in the performance of its functions the department of public utilities acts to some extent in a judicial capacity, primarily it is exercising a delegated legislative function in making rates, and thus we must consider the jurisdictional argument from a somewhat different standpoint than we would ordinarily consider the territorial jurisdiction of a court. There are public utilities operating in the state of Washington which have parts of the instrumentalities by which their service is rendered located in other states, and in order to determine proper rates to be charged, co-operation with the regulatory bodies of the neighboring states and the United States is necessary. In order that the regulatory body of this state might function to the fullest extent in its rate-making process chapter 177, p. 493, of the Laws of 1925 (Rem. Rev. Stat., § 10779-2 [P.P.C. § 239-5]) was enacted. The act reads as follows:
"The director of public works shall have full power and authority to make joint investigations, hold joint hearings, and issue joint and concurrent orders in conjunction or concurrence with any official, official board or commission of any state of or the United States, whether in the holding of *Page 145 
such investigations or hearings or in the making of such orders the commission shall function under agreements or compacts between states or under the concurrent power of states to regulate interstate commerce or as an agency of the Federal Government or otherwise."
The authority given by this act necessarily carried with it the power to hold hearings without the state of Washington in order to obtain evidence with reference to the various rate-making factors prescribed by statute. The appellants argue that, if this position is taken, there would be nothing to prevent the respondent from holding public hearings at such distances from the locality involved that patrons of a public utility might be deprived of any opportunity to be heard. It might be that a situation could arise where such action on the part of a regulatory body might be deemed to be so arbitrary or capricious or that there was such a denial of procedural due process as to make the action of such body invalid, but that situation does not exist here and is not before us for decision.
The other questions raised on this appeal, with one exception hereinafter noted, can be discussed together, as they involve the legal right of the respondent to treat the Clarkston area as a part of one unit, composed of that area and the Lewiston area, instead of considering it as a part of the whole state of Washington for rate-making purposes.
[2] The joint hearing was presided over by the members of the public utilities commission of Idaho and the assistant director and chief examiner of the department of public utilities of Washington. The appellants were given full opportunity to cross-examine witnesses and present such evidence as they desired. No error is assigned upon the reception or rejection of evidence. The two departments of the joint tribunal recognized they were confronted with an unusual situation, but it was one which the company and its patrons in both states had created, and the two tribunals had to decide whether to determine the rate-making factors by attempting to segregate according to the boundary line between the two states or treat the whole area served through the only existing local exchange as one unit *Page 146 
for rate-making purposes. The evidence, taken as a whole, makes it clear that it was much more practicable and in some aspects actually necessary to treat the project as one unit rather than two units, one located wholly in Washington and the other in Idaho. Unless there exists some constitutional or statutory inhibition against such procedure, it must be sustained by the courts.
[3] In order to avoid any interstate question arising in the fixing of telephone rates in a situation which might arise comparable to the one now before the court, the Congress by § 221 (b), Title 47, U.S.C.A. withheld jurisdiction from the Federal communications commission over charges, etc., for wire telephone exchange service, even though a portion of such service constituted interstate communication, ". . . in any case where such matters are subject to regulation by a state commission or by local governmental authority."
We have examined the authorities cited in the briefs of counsel and have made an extensive independent research. Neither the cases cited nor those we have found decide the precise questions raised by the appellants. The necessity of taking into consideration property used by a utility in the performance of its service wheresoever situated in order to fix a rate base was pointed out in State ex rel. Pacific Power Light Co. v.Department of Public Works, 143 Wn. 67, 254 P. 839, P.U.R. 1927C, 781. In that case, the value of a part of the property of the utility in the state of Oregon and of property in Washington were taken together in making up the rate base, and in affirming this procedure we said:
"This, it seems to us, is not only the just rule, but that it is the rule the legislature contemplated when it enacted the statutes relative to valuing the property of a public service corporation doing an interstate business, which we have before quoted."
In that case, the department of public works was not acting in conjunction with a rate-making process in the other state, but we cite the case for the reason that, if it is lawful in the legislative process of making rates to consider *Page 147 
the property of the utility in another state which is an integral part of the same service system, it was likewise lawful in that legislative process to join with the state of Idaho when it was also engaged in fixing rates for the same utility. We have also considered those cases where a number of telephone users were served through a city exchange and the question arose as to whether in fixing rates the subscribers within the city limits should be considered as one group or unit and the rural subscribers in another unit. This situation appeared in SouthernIndiana Tel. Tel. Co. v. Public Service Com., 1 P.U.R. (N.S.) 285. The viewpoint expressed was substantially that taken by respondent in the case before us, although the line of demarcation sought to be made was the city limits on the one hand and the state line on the other. It was there said:
"The evidence in this case fails to disclose any practical method by which the property of one of plaintiff's exchanges situate within the municipality can be separated from the exchange property in the surrounding rural district for rate-making purposes. All of the property of the exchange, both urban and rural, is connected by a common switch board and central plant, and none of the property within any one exchange territory can be separated from any of the other property within such exchange in such a manner as will permit the telephone utility properly to serve the public, for the reason, as above pointed out, that telephone service which is useful to the public necessarily means the transportation of messages between any two subscribers connected with the exchange, regardless of how widely separated, including both urban subscribers and rural subscribers within such territory. From the viewpoint of transportation of messages, there should be no arbitrary `city limits' within the territory served by a single exchange. Both economically and socially the exchange territory is a unit, and neither the urban subscribers nor the rural subscribers would be satisfied with a telephone service unless they could communicate with each other at all times and from all points within the exchange district."
See, also, Milwaukee v. Railroad Comm., 206 Wis. 339,240 N.W. 165, P.U.R. 1932B, 339, and Cincinnati v. Public UtilitiesComm., 105 Ohio St. 181, 137 N.E. 36. *Page 148 
 [4] We are unable to find from our examination of the record that the telephone users in the Clarkston area were in any way prejudiced by holding a joint hearing at Lewiston, or that their rates were determined according to any law of the state of Idaho in conflict with any law of the state of Washington, or that they were denied any rights which the laws of Washington gave them, or that the hearing was had and conducted in a different manner than if it had been held at Clarkston. We gather from the argument of counsel and some statements made in the briefs that the appellants fear, if it is decided by this court that this procedure was lawful, it may establish a precedent so that burdensome rates may be imposed upon the telephone users in the Clarkston area in order to pay operating deficits in rural areas adjacent to Lewiston. This question is not now before us, and we must assume that, if such an attempt is made, the department of public utilities of this state will protect the telephone users in that area against any rates other than those necessary and proper to yield to the utility a fair rate of return on a legitimate and proper investment.
We have reached the conclusion that the department of public utilities did not abuse its discretion in treating the Clarkston area as a part of the Lewiston exchange area as the rate-fixing unit, and that it was proper to consider rates for Clarkston separate from the state as a whole.
After the joint hearing was adjourned, the departments of both states took the case under advisement. The Idaho commission established a general increase in rates for the Lewiston portion of the exchange. The respondent had before it evidence of the number of patrons in Clarkston, the valuation of the properties located in Clarkston, the amount of revenue derived from Clarkston subscribers for local exchange service, and the various rate-making factors regarding the entire exchange area. The third supplemental order approved the same exchange rates for Clarkston subscribers as had been established in Lewiston, which rates were found to be substantially equal to rates prevailing *Page 149 
throughout the state of Washington for exchange areas enjoying a similar station availability.
The final contention made by appellants is that the order of the department is invalid because not supported by adequate or sufficient findings of fact. This question was raised and presented to the trial judge, who found adversely to the appellants. We find nothing in the record which would justify us, in our review of the judgment, in concluding error was committed.
The judgment is affirmed.
JEFFERS, C.J., ROBINSON, SIMPSON, and SCHWELLENBACH, JJ., concur.