[Nos. 32657, 32658. *En Banc*. July 2, 1954.]

*In the Matter of the Application of* S. DEAN ARNOLD *for Writ of Review to the Washington Public Service Commission.*

THE STATE OF WASHINGTON, *on the Relation of S. Dean Arnold, Appellant,* v. THE WASHINGTON PUBLIC SERVICE COMMISSION *et al., Respondents.*[1]

*C. Orno Shoemaker,* for appellant.

*The Attorney General* and *Frank P. Hayes, Assistant,* for respondent Washington Public Service Commission.

*McMicken, Rupp & Schweppe,* for respondent Pacific Telephone and Telegraph Company.

MALLERY, J.—Appellant brought appropriate actions to have two orders of the Washington public service commission set aside.

[1] Reported in 272 P. (2d) 149.

The appeal from the first order (our No. 32657) is dismissed, because it is moot.

This is an appeal from the judgment of the trial court affirming the second order, which granted the telephone company an increase in rates for Clarkston, Washington.

Appellant is a telephone user in that city, which is directly across the river from Lewiston, Idaho, where the telephone exchange serving him is located. Clarkston has never had a telephone exchange. It and Lewiston are both supported by the same hinterland, located chiefly in Idaho. Eighty-eight per cent of the telephone company's operating property, and three-fourths of the telephones served by the Lewiston exchange, are in Idaho. The Washington public service commission fixed the rate for Clarkston so as to yield a fair return on the operative property in Idaho after payment of operating costs in that state. This procedure was approved in *State ex rel. Clarkston Chamber of Commerce v. Department of Public Utilities,* 34 Wn. (2d) 141, 208 P. (2d) 882. Naturally, the telephone rate established by the Washington public service commission for Clarkston, is the same as that fixed by the Idaho authorities for Idaho telephones served by the Lewiston exchange. The Lewiston rate was established on a state-wide basis.

Appellant contends that profits from the Lewiston exchange are used to make up deficits occurring in the rural sections of Idaho. A business telephone on the Lewiston exchange costs $11.75 a month, while the same telephone on a Washington exchange, having comparable station availability, costs eight dollars a month. Appellant contends that his payment of the Lewiston exchange rate amounts to subsidizing the rural Idaho service.

It is true that both Washington and Idaho rates are fixed on a state-wide basis, and that the costs of service are higher in the country than in cities. It is not, however, strictly accurate to call state-wide rate making a subsidy to rural communities. Every city is supported by and is dependent upon its hinterland, and the availability of rural telephones to the city dweller or business man is as indis-

pensable to him as the service within the city limits. A state-wide rate, therefore, is not so much a matter of subsidy as it is the recognition of the interdependence between cities and their hinterland. In any event, that method prevails in a majority of states. See *Re The Chesapeake & Potomac Tel. Co. of Virginia,* 69 P. U. R. (N.S.) 161, and cases cited, affirmed in *Board of Supervisors of Arlington County v. Commonwealth ex rel. Chesapeake & Potomac Tel. Co. of Virginia,* 186 Va. 963, 45 S. E. (2d) 145. Appellant has no just grievance either because Idaho rates for Lewiston are fixed on a state-wide basis, or because Clarkston rates for the Idaho service equal the Idaho rates.

■ Appellant invokes RCW 80.36.170 [*cf.* Rem. Rev. Stat., § 10378], which reads:

"No telegraph or telephone company shall make or give any undue or unreasonable preference or advantage to any person, corporation, or locality, or subject any particular person, corporation, or locality to any undue or unreasonable prejudice or disadvantage."

Appellant contends the statute entitles him to a rate equal to the Washington rate for exchanges having telephone availability comparable to the Lewiston exchange, and that to charge the higher Idaho rate constitutes a discrimination against Clarkston.

What appellant actually seeks is to enjoy Idaho exchange service for Idaho telephones at a rate less than the residents of Idaho pay, because he is in Washington where comparable Washington rates are lower. To grant his demand would impose two different rates upon a single exchange, and would be discriminatory against residents in Idaho using the same service.

Appellant does not contend that the Idaho rate is too high for Idaho, but only that he should enjoy a lesser rate because he lives in Washington. His contentions would be on an entirely different basis, if his service was through a Clarkston, Washington, exchange, a situation not before us. The Washington statute does not entitle him to extraterritorial favoritism in Idaho.

The judgment is affirmed.

GRADY, C. J., HAMLEY, DONWORTH, and FINLEY, JJ., concur.

HILL, J. (concurring in the result)—I concur in the result. It seems to me that, if appellant is entitled to the benefit of a Washington state-wide rate, that rate should be the one applicable to similar service in the group of Washington cities in which Clarkston's estimated two thousand telephone stations would place it, *i.e.*, in Group III (1,501 to 5,000 stations). That rate would be lower than the Washington state-wide rate in Group IV (5,001 to 10,000), to which appellant claims he is entitled, but would make subject to toll charge all of his calls to the more than seventy-five hundred stations in Lewiston, Idaho, to which he now has connections without such charge.

I doubt that appellant would desire a Washington state-wide rate on that basis, even though it would relieve him from the discrimination of which he now complains. In any event, he is not asking for that relief. He wants Group IV service by virtue of more than seventy-five hundred telephone stations in Idaho, and yet he desires to enjoy the Washington state-wide rate for cities in that group.

I agree with the majority that there is no merit to appellant's claim of "unreasonable prejudice or disadvantage," and would affirm.

OLSON, J., concurs with HILL, J.

WEAVER, J. (dissenting)—Appellant lives in Clarkston, Washington. There are about two thousand telephones in Clarkston and vicinity. Across the Snake River *in Idaho,* there are approximately seventy-five hundred telephones in Lewiston and vicinity. Both communities are served by one telephone exchange, located in Lewiston, Idaho.

The Pacific Telephone and Telegraph Company operates, in general, throughout the state of Washington. The company's operation in Idaho is more limited. It has fourteen exchanges in five central Idaho counties. The major portion of the company's Idaho operation is within the service area of the Lewiston, Idaho, exchange.

Through the central exchange in Lewiston, Idaho, a telephone user, living in Clarkston, Washington, has almost ten thousand other telephones available to him without a toll charge. For rate-making purposes, the Clarkston-Lewiston exchange is in Group IV, which includes those exchanges having a station availability of five thousand to ten thousand telephones.

A telephone user in Group IV in the state of *Washington* pays $4.10 for an individual residence telephone. A telephone user in *Clarkston, Washington,* pays $5.25 for the same service, or twenty-eight per cent more. An individual business telephone is forty-six per cent more. Other charges for different services vary between these extremes.

In order to support this result, the respondent corporation argues as follows:

The telephone stations of Clarkston, Washington, and Lewiston, Idaho, are a part of the same mechanical exchange or unit (an arrangement determined by the company, not by the users), and therefore should be charged the same rate for the same station availability. Telephone rates must be fixed on a state-wide basis to insure a utility a fair return on its investment; therefore, the telephone rates of the residents of Clarkston, Washington, must be fixed by reference to the utility's investment in Idaho. This is the method used in the instant case and approved by the majority opinion when it says:

"The Washington public service commission fixed the rate for Clarkston so as to yield a fair return on the operative property *in Idaho* after payment of operating costs in that state." (Italics mine.)

The authorities support the "state-wide" method of rate making. *People ex rel. Public Utilities Comm. v. Mountain States Tel. & Tel. Co.,* 125 Colo. 167, 243 P. (2d) 397, 401 (1952). Its application gives little trouble so long as the rate, as thus determined, applies only to an area within the boundaries of a single state. However, it is apparent that discrimination may arise when the application of a "state-wide" rate of one state, to a geographic portion of a second

state, results in a rate grossly in excess of the "state-wide" rate of the second state for comparable service. That is exactly the situation in the instant case. Residents of Clarkston, Washington, are required to pay from twenty-eight per cent to forty-six per cent more for comparable telephone service than other residents of the state of Washington.

I realize the convenience of such a system of rate-making to a utility which extends into many states; but I cannot escape the conclusion that the application of Idaho "state-wide" rates to the residents of Clarkston, Washington, produces a result which is so disproportionate to the established Washington "state-wide" rate for comparable service that it is arbitrary and capricious. It should not be permitted to stand in view of our statute.

Laws of 1911, chapter 117, § 42, p. 566, Rem. Rev. Stat., § 10378 [*cf.* RCW 80.36.170], provides:

"No telegraph company or telephone company shall make or give any undue or unreasonable preference or advantage to any person, corporation or locality, or subject any particular person, corporation or locality to any undue or unreasonable prejudice or disadvantage *in any respect whatsoever.*" (Italics mine.)

The undue or unreasonable prejudice or disadvantage, of which the statute speaks, refers to the prevention of undue prejudice or disadvantage between persons, corporations, or localities *of this state.* This, to my mind, answers respondents' claim that the charge of the Clarkston, *Washington,* residents does not become discriminatory until the *Idaho* "state-wide" rate gives to the company a greater return upon its Idaho investment than it receives from its investment in Washington.

I believe the former opinion of this court (*State ex rel. Clarkston Chamber of Commerce v. Department of Public Utilities*, 34 Wn. (2d) 141, 208 P. (2d) 882 (1949)) should be read in the same light. The court said:

"We gather from the argument of counsel and some statements made in the briefs that the appellants fear, if it is decided by this court that this procedure was lawful, it may establish a precedent so that burdensome rates may be im-

posed upon the telephone users in the Clarkston area in order to pay operating deficits in rural areas adjacent to Lewiston. *This question is not now before us, and we must assume that, if such an attempt is made, the department of public utilities of this state will protect the telephone users in that area* [Clarkston, Washington] against any rates other than those necessary and proper to yield to the utility a fair rate of return on a legitimate and proper investment." (p. 148·) (Italics mine.)

(In addition, the court found that the exchange rates for Clarkston were substantially equal to rates prevailing throughout the state of Washington for exchange areas enjoying a similar station availability.)

The Washington public service commission should fix the Clarkston, Washington, rates in the same manner it fixes telephone rates for the rest of the state of Washington. The rates should yield to the utility a "fair rate of return on a legitimate and proper investment" *in the state of Washington.* This will preserve the "state-wide" method of rate determination in its entirety.

However, so long as Clarkston remains a portion of the Lewiston exchange, the rate should be determined by the comparable Washington group of station availability.

For these reasons, I believe that the decision of the trial court should be reversed and such relief granted to appellant as I have indicated in this dissent.

SCHWELLENBACH, J., concurs with WEAVER, J.