CITY OF ARLINGTON, Texas, et al., Appellants,

v.

TEXAS ELECTRIC SERVICE COMPANY, Appellee.

No. 17769.

Court of Civil Appeals of Texas, Fort Worth.

Aug. 6, 1976.

Rehearing Denied Sept. 10, 1976.

Tom Todd, City Atty., Arlington, Hutchison, Price & Boyle, and Rayford Price, Dallas, for appellants.

Cantey, Hanger, Gooch, Cravens & Munn, J. A. Gooch, Fort Worth, for appellee.

## OPINION

SPURLOCK, Justice.

This is an appeal from an order granting a public utility an injunction after a city whose residents it serves had denied it a rate increase. Appellee, Texas Electric Service Company (hereinafter called "TESCO"), brought this suit to enjoin the City of Arlington, the Mayor of Arlington, and the other members of the Arlington City Council (hereinafter referred to as "the City") from enforcing Ordinance No. 74–17 enacted by the City, effective April 1, 1974. The ordinance set certain electric rates TESCO could charge its customers in Arlington.

On September 2, 1975, TESCO had petitioned all the municipalities it serves, including the City of Arlington, for a rate increase. The rate increase was approved by all of the 72 municipalities with the exception of Arlington and Grand Prairie. After the staff of the City of Arlington, including the finance director, had investigated the petition for a rate increase and after several public hearings, on December 23, 1975 the City adopted a resolution denying TESCO's request.

Thereafter, TESCO brought this suit seeking an injunction to prohibit the City from continuing to enforce said ordinance

on the grounds that it does not allow TESCO a fair rate of return on the fair value of TESCO's property used and useful in supplying electricity to its customers in the City.

After a hearing the court overruled the City's motion to abate and dismiss the suit and granted a temporary injunction effective February 12, 1976, in accordance with TESCO's request. TESCO posted a bond in the sum of $2,000,000.00 to indemnify its Arlington customers in the event of an adverse decision.

At the City's request the trial court filed an original and supplemental findings of fact and conclusions of law.

Prior to submission in this Court, the City assigned 10 points of error; after submission it assigned one additional point of error. In its brief the City states that its points of error 4 through 10, inclusive, deal with the City's plea in abatement. They are briefed together. The eleventh point of error also deals with the City's plea in abatement. Points of error 4 through 11 will be considered together by this Court.

The City filed a plea in abatement praying that this suit be abated and dismissed because TESCO did not furnish the City all the information necessary for it to consider a rate increase. The evidence reflects, and it is undisputed, that TESCO did furnish the City all information necessary to determine a fair rate, but that TESCO had additional information which the City did not request. The evidence further shows, without dispute, that TESCO offered to furnish the City with any information it desired. The City replied that it had all the information it desired.

Eight of the City's eleven points of error deal with the trial court's alleged error in denying the City's plea in abatement. There is no statute or rule which permits an interlocutory appeal with respect to the denial of a plea in abatement.

■ "An interlocutory judgment or order is one made during the pendency of an action or proceeding that does not finally dispose of the case but leaves it in such a state that further action by the court is necessary in order to settle and determine the entire controversy." 3 Tex.Jur.2d 392, Appeal & Error, § 74 (1974); *Bloomfield Royalty Corp. v. Carco Investments, Inc.,* 435 S.W.2d 178 (Tex.Civ.App., Houston 14th Dist., 1968, writ ref., n.r.e.); *State v. Cook United, Inc.,* 464 S.W.2d 105 (Tex.Sup.1971).

■ As a general rule, appeals lie only from such interlocutory orders as are specially made appealable by the rules or a statute. *Beacon Oil & Refining Co. v. State,* 56 S.W.2d 519 (Tex.Civ.App., Austin, 1933, no writ hist.); *Witt v. Witt,* 205 S.W.2d 612 (Tex.Civ.App., Fort Worth, 1947, no writ hist.).

■ An order overruling a plea in abatement and refusing to dismiss a cause in response to such plea is an interlocutory order. *Beacon Oil & Refining Co. v. State,* supra. But of course, if a plea in abatement were sustained, resulting in dismissal of the suit, disposing of all the parties and issues, a final judgment being rendered, such an order would be appealable. *Witt v. Witt,* supra.

■ The granting of a temporary injunction is an appealable order. Rule 385, T.R.C.P.

The question arising is, can the City tack an interlocutory order from which no appeal lies to the appeal of the temporary injunction from which an appeal does lie and in that manner get an appeal from the unappealable order of the trial court?

■ An appeal from an interlocutory order granting or refusing a temporary injunction may not be used as a vehicle for carrying other non-appealable interlocutory orders and judgments to the appellate court. *Hastings Oil Co. v. Texas Co.,* 149 Tex. 416, 234 S.W.2d 389 (1950); *Bloomfield Royalty Corp. v. Carco Investments, Inc.,* supra; *Jernigan v. Jernigan,* 467 S.W.2d 621 (Tex.Civ.App., Beaumont, 1971, writ dism.); *Witt v. Witt,* supra; *Hammonds v. Lloyds Fire & Cas. Assur. of San Antonio,* 256 S.W.2d 223 (Tex.Civ.App., San Antonio, 1953, no writ hist.).

This principle of law was applied by the Supreme Court in *Johnson v. Avery*, 414 S.W.2d 441 (Tex.1966), which stated: "Such court, in exercising its jurisdiction, over-ruled such plea in abatement, and its order in such matter, being purely interlocutory, can only be reviewed by an appellate court when a final judgment is rendered in the case."

■ The attempted appeal of the court's order overruling the plea in abatement is dismissed for want of jurisdiction.

This disposes of the City's points of error Nos. 4 through 11.

The first, second and third points of error all deal with TESCO's burden in the trial court to plead and prove it was entitled to the temporary injunction.

In its argument under these points the City attacks the temporary injunction as follows:

(1) Appellee's pleadings do not show a probable right or a probable injury if an injunction is not granted.

(2) Appellee failed to meet its burden to offer some substantial and probative evidence to support its cause of action because

(a) it failed to show the fair value of its property allocable to furnishing electric service to the City of Arlington alone;

(b) it offered only hearsay evidence to prove the facts it endeavored to prove; and

(c) it failed to show the present value of its existing property in that it used the year ending December 31, 1976 as its test year.

(1) The City's attack on the pleadings is without merit.

■ In very brief summary form TESCO pleaded all the necessary requisites for the granting of a temporary injunction. It pleaded that it had been deprived of its right to a fair return on the fair value of its property used and useful in the furnishing of electric service, and that thus its property was being confiscated in violation of its rights under the laws of the State of Texas, and under Art. 1, §§ 17 and 19 of the Constitution of this State. It further alleged that if the ordinance in question were enforced, TESCO would not earn a fair return on the fair value of its property used and useful for the furnishing of electricity to its customers. Such ordinance would compel TESCO to furnish electric service in Arlington, at rates which would result in confiscation of TESCO's property.

■ (2)(A) The City next contends that TESCO offered only evidence pertaining to system-wide or Fort Worth division-wide data, and offered no evidence concerning the fair value of TESCO's property used and useful in servicing its customers in Arlington.

A similar contention was rejected by the Supreme Court in the case of *General Telephone Company v. City of Wellington*, 156 Tex. 238, 294 S.W.2d 385 (1956). That case cites, in support of its decision, *Lone Star Gas Co. v. Texas*, 304 U.S. 224, 239, 58 S.Ct. 883, 82 L.Ed. 1304 (1938), a case in which the Railroad Commission of Texas established Texas rates for gas produced in Texas and Oklahoma and sold by an integrated utility with producing properties and pipe lines both in Texas and Oklahoma. The Supreme Court held that the Commission properly considered the value of the properties in both States, and further held that, this being so, a reviewing court could not validly require the company to segregate the Oklahoma and Texas operations in order to demonstrate the Texas rates to be confiscatory. It also cites with approval the case of *State v. Department of Public Utilities*, 34 Wash.2d 141, 208 P.2d 882, 884, 885 (1949), for the same proposition. In that case, the rate-making authorities of Washington and Idaho met jointly in Idaho in order to fix telephone rates in two adjoining cities separated only by the state line.

See also *General Telephone Co. of S. W. v. City of Garland*, 509 S.W.2d 927 (Tex.Civ. App., Dallas, 1974, writ ref., n.r.e.). These decisions hold that area-wide data are acceptable for use in determining values in one part of the area. We concur.

■ However, even if the law required city-wide as opposed to area-wide computations, TESCO has met even that burden.

The City's exhibit #1, "Analysis of Electric Company Rate Request" for Fort Worth, January, 1976, allocated the share of TESCO's property used and useful in Fort Worth at 27.77%. There was uncontradicted testimony by Mr. Scarth, vice president of TESCO, that Arlington consumes roughly 10% of the overall electricity produced by TESCO. Keith Reed, finance director of the City, testified it would be reasonable to allocate on a percentage basis, in the same manner as was done for TESCO's Fort Worth customers.

The City's contention (2)(A) as stated above is without merit.

(2)(B) The City next contends that TESCO's financial and accounting exhibits and the testimony based thereon are hearsay and therefore not competent evidence.

Mr. E. D. Scarth, vice president of TESCO, testified in a dual capacity. Not only is he an expert by training and experience, but he also supervises that part of TESCO's operation from which the questioned records emanated. Besides his degree in electrical engineering, he has been with TESCO over 26 years, and has worked for them as an engineer, transmission superintendent, commercial manager in charge of customer service and operations, division manager, vice president of engineering, research, and purchasing, and his present position, vice president in charge of division and region operations. His qualifications as an expert are beyond attack.

As for his specific knowledge about the exhibits admitted into evidence, in the position Mr. Scarth was holding at the time of trial, he had charge of all the cities and local offices within TESCO's service area, as well as the engineering, construction, and maintenance of facilities, in addition to customer accounting, billing, and collection. Further, as an officer of the company, he exercises influence over the facilities that do not serve customers directly, such as power plants. He is eminently well qualified to testify about the records in question, being in charge of both the people who compiled the information in the exhibits and the records themselves. He testified that he was familiar with the records and how they were put together, although he had not prepared all of them personally.

When an expert witness testifies in that capacity, and his testimony is based partly on his knowledge and partly on reports made by others, it is admissible. *Sutherland v. McGregor*, 383 S.W.2d 248, 249 (Tex.Civ.App., Fort Worth, 1964, no writ hist.). The fact that the opinion of an expert is based on reading and experience does not render it inadmissible. *Coffee v. William Marsh Rice University*, 408 S.W.2d 269, 285 (Tex.Civ.App., Houston, 1966, ref., n.r.e.).

If the court had found the records inadmissible, it would not change the outcome of this case because both Mr. Scarth and Mr. McClellan, a certified public accountant whose specialty is public utilities regulatory matters, testified without objection to all the pertinent data included within the reports. Thus its admission, even if it had been error, would have been harmless error, since the pertinent data were properly before the court.

Further, where there is independent evidence to support the judgment, it will be presumed the trial judge disregarded evidence improperly received, and that any such evidence was harmless, there being no showing of prejudice. 57 Tex.Jur.2d 328, Trial, § 571 (1964).

We hold the admission of the above exhibits and testimony, if error, was harmless error.

(2)(C) The City's remaining contention is, in effect, that it is impermissible, for rate-making purposes, to use a projected test year, the year 1976.

The City contends that not all the property upon which TESCO calculates its fair value is in existence at this time. Mr. Scarth testified that the fair value of the property of Texas Electric Service Company was $1,495,184,456.00. He then testified: "Then the only property, really, that technically isn't in existence today that will be in service in 1976 would be the crossarms

that we will buy and the poles that we will buy that may not be in our yard more than two or three months before they are actually put in service to serve the customers." He testified that these poles and crossarms represent only an infinitesimal fraction of the TESCO total property now in existence upon which the calculations were made. They could not have a perceptible effect on the fair value of the property or fair return thereon.

In connection with this contention the City argues that TESCO is entitled to demand just compensation, and just compensation is a fair return upon the reasonable value of the property *at the time* it is being used for the public. It cites for its authority *Fort Worth Gas Co. v. City of Fort Worth*, 35 F.2d 743 (N.D.Tex.1929). This case does not support the City's proposition. That Court specifically held: "A rate depends upon the property value at the time of the effective date of the order *and for a reasonable time thereafter*. The present and the *future* must be considered. . .

"It must be determined whether the rates complained of are yielding, and *will yield*, over and above the amount required to pay taxes and proper operating charges, a sum sufficient to constitute just compensation for the use of the property employed in furnishing the service. Such a rate is a reasonable rate of return, and must be made on the value of the property at the time of the investigation *and for a reasonable time in the immediate future*." (35 F.2d at 747) (Emphasis ours.) A projected testing of the return afforded by utility rates is not only permissible, but it has been held that such a projection must be undertaken.

In *McCardle v. Indianapolis Water Co.*, 272 U.S. 400, 408, 47 S.Ct. 144, 147, 71 L.Ed. 316 (1926), the Supreme Court said:

"But in determining present value, consideration must be given to prices and wages prevailing at the time of the investigation; and, in the light of all the circumstances, there must be an honest and intelligent forecast as to probable price and wage levels during a reasonable period in the immediate future. In every confiscation case, the future as well as the present must be regarded. It must be determined whether the rates complained of are yielding and will yield, over and above the amounts required to pay taxes and proper operating charges, a sum sufficient to constitute just compensation for the use of the property employed to furnish the service; that is, a reasonable rate of return on the value of the property at the time of the investigation and for a reasonable time in the immediate future. *S. W. Tel. Co. v. Pub. Serv. Comm.*, 262 U.S. 276, 287, 288 [43 S.Ct. 544, 67 L.Ed. 981]; *Bluefield Co. v. Pub. Serv. Comm.*, 262 U.S. 679, 692 [43 S.Ct. 675, 67 L.Ed. 1176]. Cf. *Board of Utility Commissioners v. New York Telephone Co.*, 271 U.S. 23, 31 [46 S.Ct. 363, 70 L.Ed. 808]."

The wisdom of this rule is demonstrated by the facts of this case. The record reflects that an order of the Railroad Commission of Texas dated December 17, 1975, will have the effect of severely restricting the use of gas in TESCO's boilers. TESCO had been using natural gas exclusively to fuel its boilers to operate its generators. Foreseeing the gradual phase-out of natural gas for generating purposes, TESCO began buying coal deposits in East Texas many years ago. Now they are building generating plants in the vicinities of these coal deposits. In addition thereto, TESCO is constructing a nuclear power plant in Hood County. In order to obtain the capital necessary to effect this expensive transition, TESCO must sell preferred stocks and bonds on the open market. In order to sell them at a reasonable price or rate of interest, TESCO must show that its property is producing and will produce a fair return. On these and many other facts in the record, the wisdom of the rule announced in *Fort Worth Gas Co. v. City of Fort Worth*, supra, becomes evident. A rate should be fixed upon the fair value at the time of the investigation and for a reasonable time thereafter. Both the present and the immediate future must be considered.

The year 1976 is a valid test year.

Points 1, 2 and 3 are overruled.

The attempted appeal from the order overruling the plea in abatement is dismissed for want of jurisdiction. The judgment granting the temporary injunction is affirmed.