**CITY OF CORPUS CHRISTI, et al., Appellants,**

v.

**PUBLIC UTILITY COMMISSION of Texas, et al., Appellees.**

No. B-7028.

Supreme Court of Texas.

May 17, 1978.

Rehearing Denied July 5, 1978.

McGinnis, Lochridge and Kilgore, B. D. St. Clair and Robert C. McGinnis, Austin, for appellants.

Dyer, Redford, Burnett, Wray & Woolsey, W. N. Woolsey, Corpus Christi, John L. Hill, Atty. Gen., Joyce B. Carpenter, Asst. Atty. Gen., Austin, for appellees.

SAM D. JOHNSON, Justice.

The instant case requires an interpretation of the Public Utility Regulatory Act, Article 1446c, Texas Revised Civil Statutes Annotated, and presents a central issue of first impression.

Appellants Corpus Christi, et al., here seek direct appellate review of the order of the district court refusing to enjoin enforcement of the final order of the Public Utility Commission granting an increase of electric utility rates for Central Power and Light Company within appellant cities. The jurisdiction of the Supreme Court is alleged pursuant to Article V, Section 3–b, Texas Constitution, Article 1738a, Texas Revised Civil Statutes Annotated, and Rule 499a, Texas Rules of Civil Procedure, which provide for direct appeal to this court of any order of the trial court granting or denying an injunction on the grounds of the validity or invalidity of an administrative order. Appellants are thirty-two of the one hundred seven incorporated cities provided electric utility service by appellee Central Power and Light in a service area comprising forty-four counties and one hundred forty-four thousand square miles in South Texas.

Central Power and Light filed a statement of intent to change rates with each of the thirty-two cities under the Public Utili-

ty Regulatory Act, *supra*, Section 43(a). *Each* city requested that Central Power and Light provide information as to "rate base, revenue, expenses, investment and rate of return" within the boundaries of each municipality pursuant to Section 23 of the Act in order to make its individual determination of the requested rate increase. Central Power and Light declined to furnish the "separated data" requested by each city and tendered instead uniform "system-wide data."[1] The term "separated data" refers to that information regarding assets and operations of the utility solely within each particular municipal boundary. "System-wide data" refers to information regarding the assets and operations of the utility throughout the entire area it serves without a breakdown as to individual cities served.

The Public Utility Regulatory Act, Section 17(a), provides that municipalities will continue to have exclusive original jurisdiction over rates within their boundaries, but under Section 17(d) the Public Utility Commission is vested with appellate jurisdiction. Pursuant to such provisions involving electric rates and after each city denied the requested rate increase, Central Power and Light appealed to the Public Utility Commission, which consolidated each of the cities' cases as its Docket No. 167, et al.[2] The Commission heard the case on the system-wide data presented by Central Power and Light over the cities' objection. This action by the Commission, hearing the case on the system-wide data, occasions the principal question to be resolved in the case at

bar. Upon Central Power and Light's request, the Commission granted an interim order setting temporary rates on January 24, 1977.

As will be more fully explained, the Commission, on February 23, 1977, entered an interim order *nunc pro tunc* setting forth a finding of imminent peril not included in the January 24 order. The final order was entered by the Commission on February 25, 1977 granting a rate increase of approximately $23,000,000. The litigation in Public Utility Commission Docket No. 167, et al., is now before this court in two distinct matters: an application for writ of error predicated on the interim order of January 24, 1977; and the instant direct appeal.

## THE APPLICATION FOR WRIT OF ERROR

After the Commission entered its interim order setting temporary rates on January 24, 1977, the cities filed suit in the 98th district court of Travis County to enjoin enforcement of the *interim order.* The cities contended that the interim order was invalid as the Commission had no express or implied power to set *temporary rates*[3] under the Public Utility Regulatory Act. Further, the cities urged that the interim order was invalid for failure to recite a finding of "imminent peril to the public health, safety, or welfare" as required by the Administrative Procedure Act, Article 6252–13a, Section 16(c), Texas Revised Civil Statutes Annotated. The 98th district court of Travis County granted a tempo-

---

1. Central Power and Light made available to each city an extensive rate filing package, compiled pursuant to Public Utility Commission regulations, which set forth in detail the current financial situation of Central Power and Light.

2. A separate proceeding, the Public Utility Commission Docket No. 91, was simultaneously in progress. Docket No. 91 included both original and appellate proceedings by Central Power and Light for rate increases in rural areas and five cities not parties to the proceedings in Docket No. 167, et al. The cities which are appellant in the instant direct appeal intervened in Docket No. 91. The Commission overruled the objections of the intervenor cities to the system-wide data provided therein by

Central Power and Light. The Commission entered its amended final order in Docket No. 91 on January 24, 1977. The entire record of Docket No. 91 was introduced into evidence in Docket No. 167, et al., and thereby made a part of the record in the instant direct appeal.

3. The cities' argument here is limited to an attack on the power of the Public Utility Commission to fix temporary rates in the exercise of its appellate jurisdiction pursuant to Sections 17(d) and 26 of the Public Utility Regulatory Act. It is undisputed that the Public Utility Commission has the power to fix temporary rates in the exercise of its original jurisdiction. Tex.Rev.Civ.Stat.Ann. art. 1446c, § 43(d).

rary injunction. Central Power and Light appealed to the court of civil appeals.[4]

In points 1 and 2 of their brief in the court of civil appeals the cities again attacked the validity of the interim order. Point 1 attacked the interim order on the grounds that the Commission had no express or implied authority under the Public Utility Regulatory Act to make temporary orders in cases it heard on appeal from a determination of a municipality. Point 2 reurged the cities' argument that the interim order was invalid for failure to comply with the Administrative Procedure Act, Section 16(c), requiring that the orders of all administrative agencies to be given immediate effect contain a finding of "imminent peril to the public health, safety, or welfare." The court of civil appeals reversed and rendered the judgment of the trial court and vacated the temporary injunction. *Public Utility Com'n v. City of Corpus Christi*, 555 S.W.2d 509 (Tex.Civ. App.—Waco 1977, writ filed). The cities then filed an application for writ of error which is now pending before this court in No. B–7136, *City of Corpus Christi, et al. v. Public Utility Commission of Texas, et al.* In points of error 3, 4, and 5 of their application for writ of error to this court the cities again urge that the interim order is invalid as the Public Utility Commission was without express or implied authority to enter a temporary order in an appellate case under the Public Utility Regulatory Act. Further, the cities reassert that the interim order is rendered invalid because the Public Utility Commission failed to find the "imminent peril" required by the Administrative Procedure Act, Section 16(c).

## THE DIRECT APPEAL

Meanwhile, following the entry of the Commission's *final* order of rate increase on February 25, 1977, the cities filed a second and distinct suit to enjoin enforcement of the final order of the Commission. The 126th district court of Travis County denied the requested injunction. The cities then instituted the instant direct appeal to the Supreme Court of the trial court's denial of the injunction on the basis of the validity of an administrative order. The thrust of the cities' argument in the trial court, and again as their points of error 1 through 5 in this direct appeal, is that the final order is invalid as it is based upon system-wide data, rather than data separated according to each municipality as they allege is required by the Public Utility Regulatory Act.

However, as their point of error number 6 in this direct appeal, the cities again urge that the *interim* order is invalid as it goes beyond the express or implied powers of the Public Utility Commission under the Public Utility Regulatory Act. Again, the cities assert that the absence of the finding of "imminent peril" required by Section 16(c) of the Administrative Procedure Act further invalidates the interim order.

Appellee Central Power and Light argues that this court has no jurisdiction to review the cities' point of error number 6 by direct appeal as the cities have previously attacked the same interim order on the same grounds in the court of civil appeals, albeit in the appeal of a different cause of action. The basis of Central Power and Light's assertion is Rule 499a which sets forth the procedures applicable to direct appeal. Rule 499a(c) provides that "[s]uch appeal shall be in lieu of an appeal to the Court of Civil Appeals . . . ." Tex.R.Civ.P. 499a(c). This court has long recognized the logical implication of Rule 499a that an appellant must choose between an appeal to the court of civil appeals and a direct appeal to the Supreme Court and cannot pursue both. *Railroad Commission v. Shell Oil Co.*, 146 Tex. 286, 206 S.W.2d 235 (1947).

■ Rule 499a creates an option for an appellant coming within its application. An

---

4. Central Power and Light initially filed this appeal in the court of civil appeals for the third supreme judicial district at Austin. The case was subsequently transferred by order of the Supreme Court to the court of civil appeals for the tenth supreme judicial district at Waco in order to equalize the business of the dockets of the respective courts pursuant to Article V, Section 6, Texas Constitution, and Article 1738, Texas Revised Civil Statutes Annotated.

appellant may proceed by regular appeal to the court of civil appeals or an appellant may elect to pursue a direct appeal to the Supreme Court. An appellant may do either, but an appellant may not do both. The *cities* exercised no election to pursue the appeal to the court of civil appeals in the cause involving the interim order; they had no reason to do so as the trial court's injunction was in the cities' favor. Rather, it was the *Commission and the utility* which exercised their option as appellants to appeal to the court of civil appeals in that case. On the other hand, it is the *cities* who are appellants in the instant case. As appellants, it is the cities which have elected to pursue this direct appeal to the Supreme Court in lieu of an appeal to the court of civil appeals.

■ Central Power and Light argues, however, that the cities, by asserting their argument defensively in the cause involving the interim order in the court of civil appeals, chose review of the merits of point number 6 by the intermediate appellate court and foreclosed Supreme Court jurisdiction by direct appeal in the instant case. We are of the opinion that the exercise of Central Power and Light's option for court of civil appeals review in a different cause of action will not infringe the cities' Rule 499a option to seek direct appeal consideration here. Central Power and Light, not the cities, initiated appeal to the court of civil appeals. The cities were called upon to defend in the court of civil appeals by asserting invalidity of the interim order and properly did so. However, resolution of the question of this court's direct appeal jurisdiction over individual point of error number 6 is not necessary to sustain the court's jurisdiction in this direct appeal. Where the Supreme Court has appellate jurisdiction of any issue it acquires "extended jurisdiction" of all other questions of law properly preserved and presented. *Harry Eldridge Co. v. T. S. Lankford & Sons, Inc.,* 371 S.W.2d 878 (Tex.1963). It is undisputed that this court properly has direct appeal jurisdiction of the cities' points of error 1, 2, 3, 4, and 5. We hold that this court also has jurisdiction to consider the cities' point of error number 6.

## THE SEPARATED DATA ISSUE

The cities present several points of error, the thrust of which is objection to Central Power and Light's failure to provide the cities with data for rate setting which has been separated to reflect information on a city-by-city basis. There is no dispute that the utility must provide information. Nor is it disputed that the utility here furnished all of the information of which it was possessed which was requested by the cities or by the Commission. Further, the Commission here made a specific finding that the utility furnished each of the cities sufficient information from which the cities could have calculated the proper rate to be charged to each of the classes of customers within the cities.

The cities were not requesting information which appears on the utility's records, but were requesting that a study be made by the utility and the results of that study in a form separated and allotted to each individual municipality be furnished to the cities. The study made by the utility allocated costs by class of customer, but did not allocate or separate costs by geographic area. The issue which must be resolved is, under the Act, which party has the burden of making the allocation and separation for the geographic area covered by each individual city, the utility seeking a rate increase or the cities themselves?

> Section 23 of the Act provides as follows: "Any municipality regulating its public utilities pursuant to this Act shall require from those utilities all necessary data to make a reasonable determination of rate base, expenses, investment, and rate of return within the municipal boundaries. The standards for such determination shall be based on the procedures and requirements of this Act and said municipalities shall retain any and all personnel necessary to make the determination of reasonable rates required under this Act." Tex.Rev.Civ.Stat.Ann. art. 1446c, § 23.

The cities argue that Section 23 requires them to accept only separated data from

the utility. Central Power and Light and the Public Utility Commission take the position that Section 23 requires the utility to provide only that information from which the municipality can calculate the rate base, expenses, investment, and rate of return within the municipal boundaries. Central Power and Light and the Public Utility Commission urge that the utility's duty was met by the provision of system-wide data here.

The instant case is one of first impression since the enactment of the Public Utility Regulatory Act. We are called upon to interpret the Act in the absence of controlling precedent. The drafters of the Public Utility Regulatory Act included a statement of its purpose in the introductory language of the Act, to establish a "comprehensive" regulatory system. Tex.Rev.Civ. Stat.Ann. art. 1446c, § 2. The Act, read as a whole, attempts to regulate the realities of contemporary utility service systems for the mutual benefit of the public and the utilities. One of these realities in this state is the existence of large integrated utilities, the facilities of which serve many communities without regard to governmental boundaries. Central Power and Light is such an integrated utility.

The separated as contrasted to the system-wide data controversy has its roots in an earlier period of utility regulation prior to the enactment of the Public Utility Regulatory Act. This court was confronted with the separated data issue in *General Telephone Company v. City of Wellington*, 156 Tex. 238, 294 S.W.2d 385 (1956). In reversing as confiscatory the telephone rates set by the City of Wellington this court approved the telephone company's provision of rate-making data from the entire exchange including both city and rural areas. However, a municipality's requirement that the utility provide separated data has been upheld by several courts of civil appeals on a case-by-case basis where such request was reasonable. *General Telephone Co. of S.W. v. City of Garland*, 509 S.W.2d

927 (Tex.Civ.App.—Dallas 1974, writ ref'd n. r. e.). *See also City of Arlington v. Tex. Elec. Serv. Co.*, 540 S.W.2d 580 (Tex.Civ. App.—Fort Worth 1976, writ ref'd n. r. e.).

■ It was against such background of this recurrent issue in utility regulation that the Public Utility Regulatory Act was enacted in 1975, with the Act to become effective as to rate making on September 1, 1976. Reading literally the provisions of Section 23, the municipality must require the utility to furnish certain information, but the burden of making the determination of rate base, expenses, investment, and rate of return is placed upon the municipality. Further, Section 23 requires that the municipality, not the utility, retain the staff necessary to make the determination of reasonable rates. The logical implication of Section 23 is that the burden of separating the required data is upon the municipality, rather than on the utility, and we so hold. This determination is supported by Section 24 which authorizes municipalities to engage consultants to make investigations and recommendations in rate-making proceedings. This Section further provides for the municipality's recovery of reasonable expenses of rate proceedings from the utility, a provision which obviously is intended to mitigate against disproportionate financial impact to the municipality. In addition, Section 29(a) of the Act assists the city in its rate-making function. This Section authorizes the inspection and copying of the utility's records, the inspection of the utility's facilities, and the examination of the utility's officers, agents, and employees by the city.

This determination finds further support. First, the Act, read as a whole, is consistent with this result. Second, this determination is consistent with the interpretation given to the Act by the Public Utility Commission. Third, this determination is consistent with the construction mandated by Section 89: "This Act shall be construed liberally to promote the effectiveness and efficiency of regulation of public utilities to the extent

that such construction preserves the validity of this Act and its provisions."[5]

Having resolved that Central Power and Light properly fulfilled its duty under Section 23 by providing system-wide data, we find without merit the cities' claim that Central Power and Light failed to exhaust its administrative remedies.

The Public Utility Regulatory Act does not require that municipalities establish rates solely on the basis of an allocation of rate base, expenses, investment, and rate of return within the municipal boundaries. Rather, Section 23 requires that the municipality make a reasonable determination of this data. Section 22 of the Act also provides that "the governing body *may* consider a public utility's revenues and return on investment in nonexempt areas." Tex. Rev.Civ.Stat.Ann. art. 1446c, § 22. [Emphasis added.] In the vocabulary of Section 22 of the Act "nonexempt areas" are those areas outside incorporated boundaries of a municipality exercising its original jurisdiction. Thus, the regulating municipality *must* determine data within the municipal boundaries and in its determination of rates *may* consider not only this internal data, but also data from other nonexempt areas of the utility system in setting rates. In the exercise of its appellate jurisdiction the Public Utility Commission is to set those rates which the municipality should have fixed in the ordinance from which the appeal was taken. Tex.Rev.Civ.Stat.Ann. art. 1446c, § 26(e). Further, where the Public Utility Commission considers it appropriate the Commission may treat two or more municipalities served by a utility as a single class. Tex.Rev.Civ.Stat.Ann. art. 1446c, § 38. We hold, therefore, that on appeal the Public Utility Commission properly considered system-wide data in determining rates for the appellant cities served by Central Power and Light. To hold otherwise would ignore the contemporary reality that the assets of an integrated utility simultaneously serve all its customers rendering the allocation of cost on a territorial basis an inappropriate method of rate setting in the context of present-day technology.

## THE SURCHARGE ISSUE

The cities also urge that the Public Utility Commission's final order is invalid because it requires a surcharge on the cities' ratepayers as a condition of the cities' recovery from Central Power and Light of rate proceeding expenses. Section 24 of the Act provides that municipalities shall have the right to hire personnel necessary to the investigation and conduct of rate-making proceedings and that the utility shall be required to reimburse such reasonable expenses. Tex.Rev.Civ.Stat.Ann. art. 1446c, § 24. The cities argue that Section 24 creates an unconditional right of recovery for the municipality and that the Public Utility Commission exceeded its authority in conditioning such recovery upon a surcharge.

We need not reach the question of whether the Public Utility Commission may properly condition a municipality's recovery of costs upon enactment of a surcharge ordinance as that question is not properly before us. In the instant case the Public Utility Commission did not limit the right of the cities to recover expenses from Central Power and Light. The restriction of which the cities complain is the Commission's "finding of fact" that Central Power and Light "*should* be allowed to collect from the rate payers in each city a surcharge for the cost of rate expense paid to third parties by it in each of said cities, provided each city determine the reasonable cost of rate expense and finalize same by ordinance and provide for its collection within one year of the date of the ordinance and sets the amount of such expense to be collected from each class of customers, the time and method of billing, such that said

---

**5.** It is to be noted that a contrary determination would enable an integrated electrical utility, for example, Central Power and Light in this instance, to be the object of a myriad of rate cases. Such a result could well be destructive of the Act's objective: "to establish a comprehensive regulatory system which is adequate to the task of regulating public utilities . . ." Tex.Rev.Civ.Stat.Ann. art. 1446c, § 2.

expense will be boerne [*sic*] equitably and rateably by each customer within each class." [Emphasis added.]

■ This finding restricts the method by which Central Power and Light may properly pass along this cost to the ratepayer, rather than restricting the cities. Pass through of rate-making costs to the consumer by a surcharge ordinance is a widely recognized rate-making practice. *Wabash Valley Elec. Co. v. Young*, 287 U.S. 488, 53 S.Ct. 234, 77 L.Ed. 447 (1933). An administrative agency is created to centralize expertise in a certain regulatory area and, thus, is to be given a large degree of latitude by the courts in the methods by which it accomplishes its regulatory function. *Railroad Commission v. Houston Natural Gas Corp.*, 155 Tex. 502, 289 S.W.2d 559 (1956).

Further, this finding is not mandatory by its language and is not included or referred to in that section of the final order which actually sets forth the decree of the Commission. Thus, the finding clearly does not amount to a conditioning of the cities' Section 24 right to recover costs as the cities assert.

## THE TEMPORARY ORDER

Finally, the cities attack the validity of the Public Utility Commission's temporary order on the grounds that the Public Utility Commission has no statutory power to enter an interlocutory order in exercise of its appellate jurisdiction. The cities alternatively urge that the temporary order is void under the Administrative Procedure Act, Article 6252–13a, Section 16(c), Texas Revised Civil Statutes Annotated, for failure to allege "imminent peril to the public health, safety or welfare."

The Public Utility Commission entered the interim order of rate increase on January 24, 1977. On February 23, 1977 the Commission entered an interim order *nunc pro tunc* adding to the January 24 order a finding of imminent peril. The Commission entered its final order on February 25, 1977, declaring effective the same rates established under the interim order of January 24. The final order held that the rates were to be effective as of the effective date of the interim order.

■ An interim or interlocutory order is by definition an order made pending the cause, before a final disposition on the merits. *First Nat. Bank of Dallas v. Brown*, 122 Tex. 168, 53 S.W.2d 604 (1932); *see also Webb v. Jorns*, 488 S.W.2d 407 (Tex.1972). The interim order entered by the Public Utility Commission on February 23, 1977 by its terms was effective only "until such time as a final hearing shall be had on such rates and a final order is entered therein by this Commission." The final order of the Public Utility Commission was entered February 25, 1977 and such entry has terminated the interim order. As the interim order is no longer effective, no relief therefrom can be granted by this court. It is well-established that when an order under consideration by an appellate court expires prior to its final determination by the appellate court, the issues relating to it are rendered moot. *Speed v. Keys*, 130 Tex. 276, 109 S.W.2d 967 (1937). We are of the opinion that as the interim order is no longer in effect, no relief therefrom can be granted by this court and the cities' attack on the validity of the interim order is rendered moot. Therefore, we do not reach the merits of the cities' complaint as to the validity of the interim order.

The judgment of the trial court refusing to enjoin enforcement of the final order is affirmed.

Dissenting opinion by DANIEL, J., in which CHADICK, J., joins.

GREENHILL, C. J., not sitting.

DANIEL, Justice, dissenting.

I respectfully dissent.

The effect of the Court's opinion is to permit regulation of electric utility rates by the Texas Public Utility Commission on a system-wide basis instead of allowing effective original rate-making jurisdiction by individual municipalities within their respective boundaries. This action is said to be

justified, on appeals to the Commission, by the following statement:

"To hold otherwise would ignore the contemporary reality that the assets of an integrated utility simultaneously serve all its customers rendering the allocation of cost on a territorial basis an inappropriate method of rate setting in the context of present-day technology."

This appears to be a policy decision which is in direct conflict with that adopted by the Legislature in the Public Utility Regulatory Act of 1975. Article 1446c, V.A.C.S. (1975).[1] Prior to the adoption of the Act, municipalities were the only public agencies which had the power to regulate the rates here involved. See repealed Articles 1119 et seq. This very issue of state-wide or system-wide regulation by the Commission versus continued regulation by the municipalities within their territorial boundaries was thoroughly considered by the 64th Legislature. Utility companies advocated more centralized control and the Texas Municipal League opposed the whole idea of a State Commission until municipal regulation within the territorial boundaries of municipalities was reserved and retained.[2]

For instance, Senate Bill 42 of the 64th Leg., Reg. Sess. (1975), proposed that the new State Commission should regulate electric and telephone rates and services, without continued local regulation. Various other bills would have diminished the existing powers of the cities to regulate rates within their boundaries, but none of them were adopted. Instead, whether wisely or not, the conference committee opted for a combination of various proposals in a manner which would permit continued local regulation by the cities within their boundaries.[3] The conference committee report, as adopted by the Legislature (Article 1446c), contains the following provisions relating to original municipal jurisdiction within the territorial limits of each municipality:

"Sec. 17. (a) Subject to the limitations imposed in this Act, and for the purpose of regulating rates and services so that such rates may be fair, just, and reasonable, and the services adequate and efficient, *the governing body of each municipality shall have exclusive original jurisdiction* over all electric, water, and sewer utility rates, operations, and services provided by an electric, water, and sewer utility *within its city or town limits.* (Emphasis added throughout.)

\*　　\*　　\*　　\*　　\*　　\*

"(e) The commission shall have exclusive original jurisdiction over electric, water, and sewer utility rates, operations, and services *not within the incorporated limits of a municipality* exercising exclusive original jurisdiction over those rates, operations, and services as provided in this Act.

\*　　\*　　\*　　\*　　\*　　\*

"Sec. 22. . . . If a municipality does not surrender its jurisdiction, local utility service *within the boundaries of the municipality* shall be exempt from regulation by the commission under the provisions of this Act to the extent that this Act applies to local service, and the municipality shall have, *regarding service within its boundaries*, the right to exercise the same regulatory powers under the same standards and rules as the commission, or other standards and rules not inconsistent therewith. . . .

"Sec. 23. Any municipality regulating its public utilities pursuant to this Act shall require from those utilities all necessary data to make a reasonable determination of rate base, expenses, investment, and rate of return *within the municipal boundaries.* The standards for such determination shall be based on the

---

1. All statutory references are to Vernon's Annotated Texas Civil Statutes unless otherwise noted.

2. See Hopper, "A Legislative History of the Texas Public Utility Regulatory Act of 1975," 28 Baylor L.Rev. 777 (1976). Dr. Hopper, a consulting economist, was a consultant to the

legislative Ad Hoc Committee on Utility Regulation and to the Senate Subcommittee on Consumer Affairs during the 64th legislative session in 1975.

3. See 28 Baylor L.Rev. at 785–789.

procedures and requirements of this Act and said municipality shall retain any and all personnel necessary to make the determination of reasonable rates required under this Act."

In view of the above provisions, read in connection with the entire Act, it is difficult to understand how the Court has concluded that the Public Utility Commission properly considered system-wide data in determining rates for the thirty-two incorporated cities served by Central Power and Light instead of separated data as to "rate base, expenses, investment and rate of return within the municipal boundaries" of each of said cities. Surely, on appeal the Commission should base its decision on the same criteria prescribed for the separate municipalities rather than on a different system-wide criteria. Section 26(e) of Article 1446c clearly states that on appeal the Commission must set "rates as the municipality should have fixed in the ordinance from which the appeal was taken." Whether a rate increase is justified for one municipality cannot be determined on overall system-wide criteria covering 107 incorporated cities in South Texas counties. Under the Act, a city cannot and should not be required to increase the rates within its boundaries simply because the utility has a revenue deficiency in other areas or places.

Prior to the 1975 Act, municipalities had authority to require that utilities provide the separated data referred to in Section 23 of Article 1446c. *General Telephone Co. of the S.W. v. City of Garland*, 509 S.W.2d 927 (Tex.Civ.App.1974, writ ref'd n. r. e.); *City of Arlington v. Tex. Elec. Serv. Co.*, 540 S.W.2d 580 (Tex.Civ.App.1976, writ ref'd n. r. e.). There is nothing in the legislative history or the words of Section 23 that would indicate an intention of the Legislature to take away this authority from the municipalities. On the contrary, the provisions of Section 23 seem to confer by statute the same authority which had been previously held to exist under prior laws. Dr. Hopper states:

"HB 433 gave the commission authority to require separated data on each city, and have [sic] permitted cities to consider revenues and return in the area outside the city (non-exempt area), when setting rates in the city's area (exempt area). Cities would retain the power to decide which to use, and whether to require separated data or not. This same language was put into C1 and remains in PURA." [4]

It would seem that since the Legislature has provided municipalities with original jurisdiction to fix utility rates within their municipal boundaries and the power to require from utilities all necessary data set forth in Section 23 for the purpose of determining such rates, any appeal from a municipality's decision should likewise be based on the separated data set forth in Section 23 rather than on system-wide data. I would hold that municipalities may require utilities to furnish the separated data within their municipal boundaries, and that such separated data should be considered on appeal until and unless the Legislature changes the law so as to provide for data to be furnished and rates to be set on a system-wide basis in lieu of the present provisions of Article 1446c relating to original municipal jurisdiction.

CHADICK, J., joins in this dissent.

## ON MOTION FOR REHEARING

On motion for rehearing the parties have submitted briefs regarding the holding of our opinion delivered May 17, 1978 that the cities' attack upon the Public Utility Commission's interim order is moot. The court has determined that its original determination on mootness should be modified and the cities' attack upon the interim order be considered on the merits.

■■■■ Concern for efficient administrative procedure requires consideration of the

4. Id. 815. See also "Public Utility Commission: Appellate Procedure and Judicial Review," 28 Baylor L.Rev. 1001, 1005 (1976), in which it is stated that under the new Act a municipality may "issue orders requesting utilities to provide data on these expenses, investments and rate of return within the municipality's borders."

**300**

validity of interim orders only upon appeal from final orders. *Lower Colorado River Authority v. Coastal States Gas Producing Company,* 551 S.W.2d 340 (Tex.1977). Further, if the interim order should be determined to be invalid, it appears that this court could grant relief by allowing the cities to recover the temporary rates paid under the interim order.

■ As previously discussed, the cities argue that the Public Utility Commission has no statutory power to enter an interlocutory order in the exercise of its appellate jurisdiction. We cannot agree. Section 16 of the Public Utility Regulatory Act provides that the Commission has the power to regulate public utilities within its jurisdiction and "to do all things, whether specifically designated in this Act or implied herein, necessary and convenient to the exercise of this power and jurisdiction." Tex.Rev. Civ.Stat.Ann. art. 1446c § 16. The setting of temporary rates pending an appeal of a rate order by the issuance of an interim order is patently necessary and convenient to the exercise of the Commission's appellate jurisdiction. Accordingly, the Commission was empowered to issue such an order.

■ Alternatively, the cities assert that the interim order is void for failure to comply with Section 16(c) of the Administrative Procedure Act. Tex.Rev.Civ.Stat.Ann. art. 6252–13a § 16(c). Section 16(c) provides that if an agency finds that imminent peril to the public health, safety, or welfare requires that immediate effect be given to a final decision or order, it may so order with appropriate recitation of such finding. On its face Section 16(c) applies only to final agency orders and does not apply to the interim order here. Therefore, we conclude that the cities' attack upon the interim order on this basis fails.

For the limited purpose of correcting our writing relative to the interim order and mootness, the cities' motion for rehearing is granted; in all other respects, such motion for rehearing is overruled.

GREENHILL, C. J., not sitting.