**Catherine CARLOCK et al., Appellants,**

v.

**PUBLIC UTILITY COMMISSION OF TEXAS et al., Appellees.**

**No. 6159.**

Court of Civil Appeals of Texas, Waco.

Jan. 29, 1981.

Timothy J. Herman, Rogers, Hughes & Herman, Austin, G. William Fowler, Fowler & Fowler, Odessa, for appellants.

Mark White, Atty. Gen., John W. Fainter, Jr., First Asst. Atty. Gen., Ted L. Harley, Executive Asst. Atty. Gen., David Hughes, Martha V. Terry, Asst. Attys. Gen., Austin, W. N. Woolsey, Dyer & Redford, Corpus Christi, for appellees.

HALL, Justice.

On July 20, 1976, appellee Central Power and Light Company announced new and higher rates beginning on that date for residential and commercial customers who were located outside the limits of incorporated municipalities in the forty-four Texas counties serviced by Central with electricity. Appellee Public Utility Commission of Texas assumed exclusive original jurisdiction over these rates of rural users on September 1, 1976 under the provisions of the Public Utility Regulatory Act. Vernon's Ann.Tex.Civ.St., Art. 1446c. Through its cycle-billing procedure, Central began collecting these new rates on or about August 27, 1976. On August 23, 1976, Central filed with each of the 107 cities located within the boundaries of its service area a statement of intent to increase its rates, effective September 27, 1976, within the cities. Central's subsequent justification before the Public Utility Commission for the rate increases, both in the rural areas and in the incorporated municipalities, was based upon an asserted system-wide operating deficiency of $36,584,000.00 for the Test-Year ending June 30, 1976.

Eleven cities granted the requested increases. Ninety-one cities suspended the effective date of the increases proposed by Central, pending further study and hearing. The cities of Poteet, Rock Springs, Agua Dulce, Alice, and Christine denied the proposed change in rates and determined that Central's existing rates in those cities were fair and reasonable. Central filed petitions for review of these denials with the Public Utility Commission. The Commission assigned its docket numbers 83 through 87 to those appeals.

On October 1, 1976, Central filed its petition with the Commission for review and approval of the existing rates instituted by it on July 20th in the rural areas. It alleged that the effected rate change was expected to increase Central's annual revenues from the rural users by $10,339,000.00. This application was given docket number 91 by the Commission. Eventually, dockets 83 through 87 were consolidated with docket 91.

Appellants, rural users of Central's services, intervened in docket 91. A part of the relief they sought was an order by the Commission requiring a refund by Central to the rural users if the existing rates were found to be unreasonable.

A group of the 107 cities that had not yet acted on Central's statement of intent to increase rates also intervened in docket 91. However, they later denied Central's proposed increase, and Central's appeals from those orders were assigned docket numbers 167, et al, by the Commission. The rates in those cities were subsequently reviewed by the Commission in dockets 167, et al, separately from docket 91, but the entire record of docket 91 was introduced into evidence in' dockets 167, et al, and thereby made a part of the record in those proceedings. The Commission's final order in dockets 167, et al, rendered on February 25, 1977, granted an increase of rates. That order was litigated through the Supreme Court of Texas, where the order was affirmed. See *City of Corpus Christi v. Public Utility Com'n*, (Tex.1978) 572 S.W.2d 290, especially footnote 2 at 572 S.W.2d 292. The order in dockets 167, et al, does not form any part of the case now before us. Our case is based upon the Commission's order in docket 91.

The Commission rendered its amended final order in docket 91 on January 24, 1977. It determined that Central's revenue deficit for the Test-Year ending June 30, 1976, was $23,435,790.00 (not $36,584,000.00 as asserted by Central); that the "present rates" in the rural areas (instituted by Central on July 20, 1976) were "improper" and should be reduced; that the rates set by each of the five cities of Poteet, Alice, Rock Springs, Christine, and Agua Dulce were "improper" and should be increased; and that no refunds should be required. Find-

ings of fact and legal conclusions were filed by the Commission in support of those rulings. They included the following:

### Findings

Finding No. 13. That the annual revenue requirements for CP&L including cost of operations is $348,917,548.

Finding No. 14. That the revenue for all services by CP&L on end of Test Year adjusted basis for the Test Period is $325,481,758.

Finding No. 15. That the revenue deficit for CP&L is $23,435,790.

Finding No. 17. That the Commission is sensitive to the need to move all rates in the direction of costs, but is also aware that such movement should not be so abrupt as to place undue hardship on any one class of rate payers, therefore, the Commission is adopting a modified version of the rate structures proposed by the company and by the Commission staff.

Finding No. 20. That the application of the rate structures set forth below to the respective classes of service, by customer based upon Test Year use and demand history, in the area outside incorporated cities and towns, referred to herein as the rural area, and in each of said cities will produce the proportionate part of the required revenues to eliminate CP&L's current revenue deficit.

Finding No. 23. That the jurisdiction of this Commission in this rate hearing is limited to those customers served by CP&L who reside outside of an incorporated city or town or who reside within the corporate limits of any of the five cities brought under the jurisdiction of the Commission by virtue of the appeal by CP&L from the rate ordinances passed by such cities which appeals were consolidated with this docket and the rates as established in this order shall be effective only as to those rate payers of which this Commission has jurisdiction at the time of this hearing.

Finding No. 38. That rates established hereunder shall not be retroactive in ef-

fect for the reason that The Public Utility Regulatory Act is not clear as to what constitutes permissible rates made effective prior to September 1, 1976.

Finding No. 39. That CP&L shall revise its proposed tariff within 10 days to reflect the rate changes approved herein, and to reflect the service requirements of this Order, which revised tariff shall be subject to review by the Commission for a period of 30 days for compliance, and if no objection is made by the Commission within such period the revised tariffs shall be considered approved.

Finding No. 41. That the present rates for service outside of incorporated cities and towns are improper and should be adjusted [reduced] to conform to the rates herein established for each class of rate payer in such unincorporated areas.

Finding No. 42. That the rates set by each of the cities of Poteet, Alice, Rock Springs, Christine and Agua Dulce are improper and should be adjusted [increased] to conform to the rates herein established for each class of rate payers within each of their jurisdiction.

### Conclusions

Conclusion No. 3. That the present rates for service outside of incorporated cities and towns are improper and should be adjusted [reduced] to conform to the rates herein established for each class of rate payer in such unincorporated areas.

Conclusion No. 4. That the rates set by each of the cities of Poteet, Alice, Rock Springs, Christine and Agua Dulce are improper and should be adjusted [increased] to conform to the rates herein established for each class of rate payers within each of their jurisdiction.

Conclusion No. 12. That the intervenors all represented classes of rate payers and their justiciable interest is limited to the issues of discrimination of rates as between the class represented and other classes of rate payers, and to whether the rate of return approved will yield more than a fair return upon the adjusted value of the company's invested capital used

and useful in rendering service to the public.

Conclusion No. 21. That the rates approved herein shall not become effective until the first billing period after a revised tariff has been completed and filed with the Commission reflecting the approved rates and conditions of service set forth herein.

Conclusion No. 24. That the rates approved herein shall not be retroactive in effect, and no refunds shall be required under this order.

Conclusion No. 25. That the tariff proposed and filed by CP&L as amended by this order is approved, subject to review for compliance.

The five cities whose rates were increased did not appeal from the Commission's order, and Central did not appeal.

Appellants filed a motion for rehearing which was overruled by the Commission. They then appealed the Commission's order to the District Court. The order was affirmed by the court. This appeal resulted.

Appellants' primary contention is that because the Commission determined that the rural rates instituted by Central on July 20, 1976, were improper and should be reduced, the Commission was under a mandatory duty to order a refund of the reduced portion of the rates paid by appellants after September 1, 1976 (when the Commission assumed jurisdiction over Central's rural rates). Upon that proposition, appellants assert that the Commission should have ordered the refund as a matter of law, and they assign error to the trial court's failure to make that conclusion. They assert that neither the Commission nor the trial court had any discretion in the matter. They argue that under pertinent provisions of the Public Utility Regulatory Act, and applicable case law, the Commission was "under an affirmative duty to prevent the making, demanding or receiving of any unreasonable rates" by Central; that it was immaterial whether or not the rates in question had been made and instituted by Central prior to the time the Commission assumed jurisdiction; and that the failure of the Commission and of the trial court to order the refund violated that duty. They request that we reverse the judgment of the trial court and remand the case to the Commission with instructions to "determine how much money should have been collected from appellants under the proper rates, and how much was collected under the improper rates," and to order a refund by Central either directly to appellants or by credit on future billings.

We hold that the Commission was not under a mandatory duty to require the refund; and we affirm the trial court's judgment.

Appellants cite *State v. Southwestern Bell Tel. Co.*, (Tex.1975) 526 S.W.2d 526, in support of their contention for mandatory refund. In that case our Supreme Court stated that in the absence of rate regulation by some authorized body, state or municipal, a public utility "may prescribe and apply its own rates, subject to the dictates of reasonableness and justice," but that the company may not demand or collect from the public "unreasonably high charges based on rates that would be extortionate to its subscribers." In our case the Commission did not expressly classify the rates charged by Central in the rural areas prior to the effective date of the amended final order as unreasonable rates. Rather, the Commission found that such rates were improper in the context of rates to be charged in the future and that the rates should be changed to conform to the order. This same conclusion was made with respect to all of Central's rates, not just to those in effect outside incorporated municipalities; and the new rates determined to be proper increased Central's rates by almost 23½ million dollars. None of the rates were made retroactive by the Commission. We believe the Commission's finding number 38 and the fact that the Commission did not make any rates it set retroactive to a date after it acquired jurisdiction reflect the Commission's determination that the rates instituted by Central were not "unreasonable" or "unjust" rates within the meaning of the rule in *Southwestern Bell*, supra (which had

been decided by the Supreme Court prior to the Commission's assumption of jurisdiction and its order in our case), but only that they were improper future rates. *Southwestern Bell* does not stand for the rule of required retroactivity where existing rates are not affirmatively determined to be unjust and unreasonable.

Appellants also cite *United Gas Public Service Co. v. State*, 89 S.W.2d 1094 (Tex. Civ.App.—Austin 1935, writ ref'd) affirmed, *United Gas Public Service Co. v. State of Texas*, 303 U.S. 123, 58 S.Ct. 483, 82 L.Ed. 702 (1938). In that case the City of Laredo by ordinance reduced the existing natural gas rate for domestic use charged by United Gas from 75 cents per M.C.F. to 40 cents per M.C.F. effective January 1, 1932. United Gas perfected an appeal from the ordinance to the Railroad Commission, and filed a bond conditioned that it would refund any excess rates over the rates finally determined to be fair and reasonable. The Railroad Commission fixed the rate at 55 cents per M.C.F., and ordered United Gas to refund the difference in the amount collected after January 1, 1932, under the 75-cent rate and the 55-cent rate, United Gas having continuously collected the 75-cent rate. The applicable statute provided as follows: "When a city government has ordered any existing rate reduced, the gas utility affected by such order may appeal to the [Railroad] Commission by filing with it on such terms and conditions as the Commission may direct, a petition and bond to review the decision, regulation, ordinance, or order of the city, town or municipality. Upon such appeal being taken the Commission shall set a hearing and may make such order or decision in regard to the matter involved therein as it may deem just and reasonable. The commission shall hear such appeal de novo." The Court of Civil Appeals held that the retroactive feature of the Railroad Commission's order was valid. The Court said:

"The appeal to the commission under the terms of [the statute] is essentially to review the city ordinance fixing the gas rate, and, since it may make such order or decision in respect to the matter (rate) involved therein as it may deem just and reasonable, the commission's functions are not only legislative, but quasi judicial as well. In the exercise of these reviewing and quasi judicial functions, the commission is authorized to suspend, pending the appeal before it, the rate fixed by the city ordinance, and to require the utility to give a bond on such terms and conditions as the Commission may direct. * *

"Since the commission had the power to suspend the reduced city ordinance rate pending the appeal, it necessarily had the power to reinstate such rate if found to be just and reasonable as of its original effective date. Likewise the commission had the power upon determining that the city ordinance rate was unjust or unreasonable, to substitute its own just and reasonable rate therefor, and to make it effective as of date of the city ordinance rate for which it was substituted.

"It is further manifest that the powers given the commission by [the statute] to review a city ordinance rate on appeal and to determine its justness and reasonableness and, if found to be unjust and unreasonable, to substitute its own just and reasonable rate therefor, are not only legislative and administrative functions, but quasi judicial as well; and, in the full exercise of such power, it necessarily follows that the commission had the power to make its own rate effective as of the date of the city ordinance rate, which it has reviewed and adjudicated as being unjust and unreasonable. [citations omitted]. And, since the commission's functions are essentially to review and adjudicate the justness and reasonableness of the city ordinance rate on appeal, its jurisdiction necessarily relates back to the date of the initial proceedings in which the city ordinance rate originated and first became effective. The rule is settled that a public utility commission has the power to make its rate order retroactively effective as of any date after it has actually acquired jurisdiction of the

cause, and, in consequence, may order the refund of excessive rates paid from and after the retroactively effective date of the rate order." (citations omitted).

The holding in *United Gas* was that the Railroad Commission had the authority and power, after it fixed the rate the city should have fixed, to make its order effective retroactively by ordering a refund. The case does not stand for the rule that the refund was mandatory.

Section 2 of the Public Utility Regulatory Act provides that the Act was enacted "to protect the public interest inherent in the rates and services of public utilities" and "to assure rates, operations, and services which are just and reasonable to the consumers and the utilities." Section 16 sets forth the general power of the Public Utility Commission "to regulate and supervise the business of every public utility within its jurisdiction and to do all things, whether specifically designated in this Act or implied herein, necessary and convenient to the exercise of this power and jurisdiction." Section 37 provides: "Subject to the provisions of this Act, the commission . . . is hereby vested with all authority and power of the State of Texas to insure compliance with the obligations of public utilities in this Act. For this purpose the regulatory authority is empowered to fix and regulate rates of public utilities, including rules and regulations for determining the classification of customers and services and for determining the applicability of rates." Section 38 provides that it "shall be the duty" of the Commission "to insure that every rate made, demanded, or received by any public utility . . . shall be just and reasonable. Rates shall not be unreasonably preferential, prejudicial, or discriminatory, but shall be sufficient, equitable, and consistent in application to each class of customers." And Section 89 provides that the Act "shall be construed liberally to promote the effectiveness and efficiency of regulation of public utilities to the extent that such construction preserves the validity of this Act and its provisions."

Appellants assert those sections require the refund they seek. We disagree. Although those general provisions might authorize the Commission to order a refund in a proper case, they do not support a mandatory refund obligation on the part of the Commission under the circumstances of our case or any particular case.

Section 42 of the Act more directly addresses the duty of the Commission under the controlling facts of our case. It provides as follows:

Whenever the regulatory authority, after reasonable notice and hearing, on its own motion or on compliant by any affected person, finds that the *existing rates* of any public utility for any service are unreasonable or in any way in violation of any provision of law, the regulatory authority shall determine the just and reasonable rates, including maximum and minimum rates, *to be thereafter* observed and in force, and shall fix the same by order to be served on the public utility; and such rates shall constitute the legal rates of the public utility until changed as provided in this Act. (emphasis supplied).

Construing a similarly worded Ohio statute, under facts analogous to ours, the United States Supreme Court held in *Public Utilities Com. v. United Fuel Gas Co.*, 317 U.S. 456, 63 S.Ct. 369, 87 L.Ed. 396 (1943), that the Ohio regulatory commission was prohibited by the express language of the statute from ordering retroactive application of rates fixed by the commission. The Ohio statute did empower the commission to make its order retroactive in appeals from municipal ordinances. After recognizing the statutory distinction between appeals from rates fixed by ordinance and original review by the commission of existing rates, the Court said:

"Section 614–16 is inapplicable because the rates to be established would not be in lieu of rates fixed by ordinance. The Commission's authority to inquire into the reasonableness of the rates charged by United for gas sold to the Portsmouth Gas Company is to be found in §§ 614–21 and ·614–23, which provide as follows:

'Upon complaint in writing, against any public utility, by any person, firm or corporation, or upon the initiative or complaint of the commission that any rate * * * is in any respect unjust, unreasonable, unjustly discriminatory, or unjustly preferential or in violation of law, * * * the commission shall notify the public utility' and hold a hearing. If, after such hearing, the Commission finds that the rate or charge is unjust, unreasonable, or otherwise unlawful, it must 'fix and determine the just and reasonable rate, fare, charge, toll, rental or service *to be thereafter* rendered, charged, demanded, exacted or collected for the performance or rendition of the service, and order the same substituted therefor.' § 614–23 (italics added). The statute in terms thus gives the Commission power to prescribe such rates prospectively only. If, after notice and hearing, the Commission finds rates to be unlawful, it can then fix the just and reasonable rates 'to be thereafter' charged. The establishment of new rates must be preceded by a finding that the old rates are unjust and unreasonable, and the new rates are prospective as of the date they are fixed. There is no basis in the statute for concluding that the Commission's orders can be retroactive to the date when the Commission's inquiry into the rates was begun; on the contrary, the explicit language of the statute precludes such construction."

If section 42 of the Texas Regulatory Act should be accorded the same construction given to the Ohio statute in *United Fuel Gas Co.,* then, in our case, the Commission was without authority to make the rural rates it fixed retroactive and order the refund sought by appellants, even if it determined that the prior rural rates instituted by Central were unreasonable. However, appellants do not assert that the Commission's failure to order the refund was an abuse of discretion, and we therefore do not decide whether the Commission had discretionary power in the matter.

Appellants have not presented to us any statutory or case law authority supporting their proposition that the refund they seek was mandatory, and we have found none. Accordingly, the contention is overruled. Appellants' three remaining complaints are also without merit under the record, and they are overruled.

Contentions by Central and the Commission that none of appellants' complaints were properly preserved for judicial review because the complaints allegedly were not assigned as error in appellants' motion for rehearing filed with the Commission are rendered immaterial by the above holdings, and we do not rule on those questions.

The judgment is affirmed.