

# The Attorney General of Texas

December 8, 1981

**MARK WHITE**
Attorney General

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

1607 Main St., Suite 1400
Dallas, TX. 75201
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905
915/533-3484

1220 Dallas Ave., Suite 202
Houston, TX. 77002
713/650-0666

806 Broadway, Suite 312
Lubbock, TX. 79401
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Mr. George M. Cowden, Chairman
Texas Public Utility Commission
7800 Shoal Creek Boulevard
Suite 400N
Austin, Texas    78757

Opinion No.  MW-406

Re:   Appeals to Texas Public Utility Commission of municipal rate orders regarding municipally owned electric utilities

Dear Chairman Cowden:

You have requested an opinion on questions concerning the meaning of several provisions of the Public Utility Regulatory Act, article 1446(c), V.T.C.S. [hereinafter "the act"]. The key sections, 26(c)-(e), read as follows:

(c)  Ratepayers of a municipally owned gas or electric utility outside the municipal limits may appeal any action of the governing body affecting the rates of the municipally owned gas or electric utility through filing with the commission or railroad commission, as appropriate, petition for review signed by the lesser of 10,000 or 5 percent of the ratepayers served by such utility outside the municipal limits. For purposes of this subsection each person receiving a separate bill shall be considered as a ratepayer. But no person shall be considered as being more than one ratepayer notwithstanding the number of bills received. Such petition for review shall be considered properly signed by any person, or spouse of any such person, in whose name residential utility service is carried.

(d)  The appeal process shall be instituted within 30 days of the final decision by the governing body with the filing of a petition for review with the commission or railroad commission and copies served on all parties to the original rate proceeding.

(e) The commission or railroad commission shall hear such appeal de novo and by its final order shall fix such rates as the municipality should have fixed in the ordinance from which the appeal was taken.

Your first question is:

Since the commission has jurisdiction over an appeal from a municipal rate order regarding a municipally owned utility, does this jurisdiction include jurisdiction to set rates charged both outside and within municipal limits? If the commission has jurisdiction to set rates both within and outside municipal limits, then, when a petition for review is filed pursuant to section 26(c), is the commission required to set rates charged both outside and within municipal limits?

Municipalities are excluded from the definitions of "public utility" or "utility" set forth in section 3(c) of the act. But see V.T.C.S. art. 1446c §49(a) (municipality within definition of "retail public utility" for purposes of article VII of the act); Public Utility Commission v. City of Coahoma, 25 Tex. Sup. Ct. J. 155 (Nov. 25, 1981). Although section 27(f) prescribes that a municipally owned utility is subject to the reporting requirements of that section, article III, which prescribes the basic jurisdiction of the regulatory authorities subject to the act, provides at section 20:

Nothing in this article shall be construed to confer on the commission or railroad commission power or jurisdiction to regulate or supervise the rates or service of any utility owned and operated by any municipality within its boundaries either directly or through a municipally owned corporation, or to affect or limit the power, jurisdiction, or duties of the municipalities that have elected to regulate and supervise public utilities within their boundaries, except as provided in this Act. (Emphasis added).

Your query is whether or not section 26(e), which requires the commission to "fix such rates as the municipality should have fixed in the ordinance from which the appeal was taken," impliedly confers upon the commission the authority to set rates for those customers inside the city limits upon an appeal under section 26(c). We conclude that it does not. Under section 3(c), a municipality is expressly excluded from the definition of "public utility." Section 20 expressly excludes the commission from regulating a municipal utility within its boundaries "except as provided in this Act." Whenever the act seeks to make exceptions to these exclusions, it does so expressly, as in section 27(f) concerning reports to the commission, and section 49(a)

involving certification. It does not follow that there could be an implied inclusion of a subject that had previously been expressly excluded.

Your second question is as follows:

> If in an appeal brought pursuant to section 26(c) the commission may set rates charged outside municipal limits only, then in setting such rates, may the commission consider system-wide data?

Section 22 of the act provides as follows:

> Notwithstanding any other provision of this section, municipalities shall continue to regulate each kind of local utility service inside their boundaries until the commission has assumed jurisdiction over the respective utility pursuant to this Act. If a municipality does not surrender its jurisdiction, local utility service within the boundaries of the municipality shall be exempt from regulation by the commission under the provisions of this Act to the extent that this Act applies to local service, and the municipality shall have, regarding service within its boundaries, the right to exercise the same regulatory powers under the same standards and rules as the commission, or other standards and rules not inconsistent therewith. <u>Notwithstanding any such election, the commission may consider a public utility's revenues and return on investment in exempt areas in fixing rates and charges in nonexempt areas, and may also exercise the powers conferred necessary to give effect to orders under this Act, for the benefit of nonexempt areas.</u> Likewise, in fixing rates and charges in the exempt area, the governing body may consider a public utility's revenues and return on investment in nonexempt areas. Utilities serving exempt areas shall be subject to the reporting requirements of this Act. Such reports shall be filed with the governing body of the municipality as well as with the commission. <u>Nothing in this section shall limit the duty and power of the commission to regulate service and rates of municipally regulated utilities for service provided to other areas in Texas.</u> (Emphasis added).

The Texas Supreme Court, in <u>City of Corpus Christi v. Public Utility Commission</u>, 572 S.W.2d 290 (Tex. 1978), held that the commission could consider system-wide data in setting rates for

customers within the city limits which were served by a public utility. Although a municipally owned utility is not a "public utility" for purposes of section 22, the final sentence of that section clearly imports that the commission has the same powers with regard to municipal utilities operating outside the city limits as are given with regard to public utilities under the former provisions of that section. Since under those provisions data from nonexempt areas may be used, the commission may consider system-wide data in fixing rates in a section 26(c) appeal.

Your third and fifth questions are as follows:

> In an appeal brought pursuant to section 26(c), does the commission have power to compel the municipally-owned utility to provide data, such as expense, revenue, rate base, and financial information, relevant to the ratemaking issues? If so, can the commission compel the municipally owned utility to provide such data on a system-wide basis? Are there any limits on the commission's power to require the municipally owned utility to provide data relevant to the ratemaking issues?

> Does the commission have jurisdiction to compel the municipally-owned utility to provide data, such as customer lists, relevant to the determination of the validity of the petition for review filed pursuant to section 26(c)?

Section 27 of the act provides that the commission may require the reporting of certain information from public utilities, including municipal utilities:

> (a) Every public utility shall keep and render to the regulatory authority in the manner and form prescribed by the commission... commission uniform accounts of all business transacted. The commission or railroad commission may also prescribe forms of books, accounts, records, and memoranda to be kept by such utilities, including the books, accounts, records, and memoranda of the rendition of and capacity for service as well as the receipts and expenditures of moneys, and any other forms, records, and memoranda which in the judgment of the commission or railroad commission may be necessary to carry out any of the provisions of this Act.

> . . . .

> (c)  Every public utility shall keep separate accounts to show all profits or losses resulting from the sale or lease of appliances, fixtures, equipment, or other merchandise.  No such profit or loss shall be taken into consideration by the regulatory authority in arriving at any rate to be charged for service by any such public utility, to the extent that such merchandise is not integral to the provision of utility service.

> (d)  <u>Every public utility is required to keep and render its books, accounts, records, and memoranda accurately and faithfully in the manner and form prescribed by the commission</u> or railroad commission, and to comply with all directions of the regulatory authority relating to such books, accounts, records, and memoranda.  The regulatory authority may require the examination and audit of all accounts.

> . . . .

> (f)  For the purposes of this section, "public utility" includes "<u>municipally owned utility</u>."  (Emphasis added).

Subsections (a) and (d) require each public utility to render its books, accounts and records to the commission.  Municipally owned utilities are subject to this requirement.  Sec. 27(f).  Furthermore, section 16 provides the commission with "the general power... to do all things, whether specifically designated in this Act or implied herein, necessary and convenient to the exercise of this power and jurisdiction."  That section goes on to state:

> The commission may call and hold hearings, administer oaths, receive evidence at hearings, issue subpoenas <u>to compel the attendance of witnesses and the production of papers and documents</u>, and make findings of fact and decisions <u>with respect to administering the provisions of this Act</u> or the rules, orders, or other actions of the commission.  (Emphasis added).

We conclude that since section 26(c) authorizes the commission to review the ordinance of the city upon the filing of the petition therein, the commission may compel the production of information necessary to perform that function pursuant to the portion of section 16 cited above.  Thus, the commission may compel the production of the information specified in your questions three and five.

Your fourth and sixth questions respectively are as follows:

> Must a petition for review brought pursuant to section 26(c) be filed within 30 days of the final decision of the governing body of the municipality, in accordance with section 26(d)?
>
> Must the commission hear appeals brought pursuant to section 26(c) de novo, in accordance with section 26(e)?

The query here is whether the provisions of sections 26(d) and (e) apply to appeals under section 26(c). Section 26 provides in full:

> (a)  Any party to a rate proceeding before the governing body of a municipality may <u>appeal</u> the decision of the governing body to the commission or railroad commission.
>
> (b)  Citizens of a municipality may <u>appeal</u> the decision of the governing body in any rate proceeding to the commission or railroad commission through the filing of a <u>petition for review</u> signed by the lesser of 20,000 or 10 percent of the number of qualified voters of such municipality.
>
> (c)  Ratepayers of a municipally owned gas or electric utility outside the municipal limits may <u>appeal</u> any action of the governing body affecting the rates of the municipally owned gas or electric utility through filing with the commission or railroad commission, as appropriate, <u>petition for review</u> signed by the lesser of 10,000 or 5 percent of the ratepayers served by such utility outside the municipal limits. For purposes of this subsection each person receiving a separate bill shall be considered as a ratepayer. But no person shall be considered as being more than one ratepayer notwithstanding the number of bills received. Such petition for review shall be considered properly signed if signed by any person, or spouse of any such person, in whose name residential utility service is carried.
>
> (d)  The <u>appeal</u> process shall be instituted within 30 days of the final decision by the governing body with the filing of a <u>petition for review</u> with the commission or railroad commission and copies served on all parties to the original rate proceeding.

(e)  The commission or railroad commission shall hear such <u>appeal</u> de novo and by its final order shall fix such rates as the municipality should have fixed in the ordinance from which the <u>appeal</u> was taken.  (Emphasis added).

Section 26 thus provides for three forms of appeal from the governing body of the municipality to the commission:

(a)  Party to proceeding before commission;

(b)  Petition of citizens of the municipality;

(c)  Petition of ratepayers outside the city limits.

All three provisions refer to an "appeal" of the municipal ordinance, while subsections (d) and (e) refer to the "appeal process" and "such appeal."  Also, subsection (e) refers to the "petition for review."  All five provisions are grouped together under one section.  Because of this, we conclude that both subsections (d) and (e) prescribe the procedure for the three types of appeal listed under (a), (b), and (c).  Therefore, subsections (d) and (e) do apply to appeals made under subsection (c).

Your seventh question is as follows:

If the commission is required to hear appeals brought pursuant to section 26(c) de novo, does that require the commission to establish the total revenue requirement of the utility even if the petition for review is limited to revenue allocation and rate design?

Under section 26(e) the review of the city ordinance is de novo. Since the effect of this requirement is that the commission must make a complete redetermination of the rates, the commission would necessarily be required to redetermine the revenue requirement. However, this would not preclude the commission from honoring an agreement of the parties as to what the revenue requirement would be.

Your final question is as follows:

In a petition for review brought pursuant to section 26(c), do all of the ratemaking provisions of article VI apply?

As previously stated, municipalities are excluded from the meaning of "public utility" and "utility" by section 3(c).  All provisions under article VI refer to public utilities or utility.  No exceptions are made for municipal utilities as under sections 27 and 49.  Therefore, we conclude that the provisions of article VI do not apply to appeals under section 26(e).

## S U M M A R Y

In hearing an appeal pursuant to section 26(c) of article 1446(c), V.T.C.S., from ratepayers of a municipally owned utility outside of the municipal limits, the Texas Public Utility Commission does not have authority to set rates for customers inside the city limits. In setting the rates for ratepayers outside of the city it may consider system-wide data, and may require municipal utilities to submit the indicated information. The procedural requirements found in sections 26(d) and (e) apply to an appeal under section 26(c). In hearing such appeals, the commission must redetermine the revenue requirement.

Very truly yours,

MARK WHITE
Attorney General of Texas

JOHN W. FAINTER, JR.
First Assistant Attorney General

RICHARD E. GRAY III
Executive Assistant Attorney General

Prepared by J. Scott Wilson and Jon Bible
Assistant Attorneys General

APPROVED:
OPINION COMMITTEE

Susan L. Garrison, Chairman
Jon Bible
Rick Gilpin
Jim Moellinger
J. Scott Wilson